100 P.3d 452

The STATE of Arizona, Appellant,

v.

Francisco Javier ESTRADA, Appellee.

No. 2 CA–CR 2003–0302.

Court of Appeals of Arizona,
Division 2, Department B.

Nov. 4, 2004.

Robert Carter Olson, Pinal County Attorney By Greg Bizzozero, Florence, Attorneys for Appellant.

Jerry Hernandez, Tempe, and Neal W. Bassett, Phoenix, Attorneys for Appellee.

## OPINION

FLÓREZ, Presiding Judge.

¶ 1 Appellee Francisco Estrada was charged with multiple counts of driving under the influence (DUI) of intoxicating liquor or drugs and one count of reckless manslaughter, arising out of a motor vehicle accident. The trial court granted Estrada's motion to suppress blood-alcohol-concentration (BAC) test results of a blood sample taken from him without a warrant at the hospital after the accident. The state then filed a motion to dismiss the charges, which the trial court granted. The state subsequently filed this appeal, pursuant to A.R.S. § 13–4032(6). *See State v. Fimbres,* 152 Ariz. 440, 733 P.2d 637 (App.1986); *see also State v. Million,* 120 Ariz. 10, 583 P.2d 897 (1978). We affirm.

### Standard of Review

¶ 2 We review a trial court's order suppressing evidence for an abuse of discretion. *State v. Rosengren,* 199 Ariz. 112, 14 P.3d 303 (App.2000). We only consider the evidence presented at the suppression hearing. *See State v. Weekley,* 200 Ariz. 421, 27 P.3d 325 (App.2001). We view that evidence in the light most favorable to upholding the trial court's ruling. *See id.* "We defer to the trial court's factual findings that are supported by the record and are not clearly erroneous." *Rosengren,* 199 Ariz. 112, ¶ 9, 14 P.3d at 307. And, the trial court, not this court, determines the credibility of the witnesses. *State v. Ossana,* 199 Ariz. 459, 18 P.3d 1258 (App.2001). However, we review the trial court's legal conclusions de novo, including its resolution of the ultimate issue of whether the warrantless blood draw offended the Fourth Amendment's prohibition against unreasonable searches and seizures. *Id.; State v. Flannigan,* 194 Ariz. 150, 978 P.2d 127 (App.1998). We also review de novo issues of statutory interpretation. *State v. Herrera,* 203 Ariz. 131, 51 P.3d 353 (App.2002).

## Facts

¶ 3 In February 2002, Pinal County Deputy Sheriff Hill was dispatched to the scene of a one-vehicle, rollover traffic accident. Hill found the driver, Estrada, performing cardiopulmonary resuscitation (CPR) on a man lying on the ground. That person was Estrada's friend, who had been the passenger in the vehicle and who died as a result of the accident. Hill assisted Estrada in performing CPR until medical personnel arrived and told them to stop. Hill testified that while she had been with Estrada she had not observed any signs or symptoms of alcohol consumption. At some point, however, a paramedic detected the smell of alcohol on Estrada's breath.

¶ 4 After some initial resistance, Estrada agreed to go to the hospital, and the medics put him on a gurney and placed him into the back of an ambulance. Another deputy at the scene, Nehrmeyer, smelled the odor of alcohol emanating from the back of the ambulance where Estrada was sitting. Shortly after the trip to the hospital began, Estrada apparently changed his mind about going voluntarily and became agitated and attempted to get out of the ambulance. The driver stopped and called for police assistance.

¶ 5 When Nehrmeyer arrived in response to the medic's call, Estrada stated that he did not want to go to the hospital. According to Nehrmeyer, he then handcuffed and shackled Estrada to the gurney at the request of the medics because of safety concerns. After Estrada was secured to the gurney, he still expressed a desire to get out of the ambulance. The medics did not allow him to do so. Estrada eventually fell asleep and slept the rest of the way to a Tucson hospital. Nehrmeyer escorted the ambulance to the hospital. At the hospital, medical personnel drew Estrada's blood. Nehrmeyer asked for and received a sample of that blood. The state subsequently filed DUI and reckless manslaughter charges against Estrada.

## Procedural History

¶ 6 Estrada moved to suppress the test results from the blood sample on the ground that the sample had been obtained without a warrant. The state argued in response that the blood sample had been properly obtained pursuant to both A.R.S. § 28–673(A), an implied consent statute, and § 28–1388(E). Section 28–1388(E) provides:

> Notwithstanding any other law, if a law enforcement officer has probable cause to believe that a person has violated [A.R.S.] § 28–1381 [1] and a sample of blood, urine or other bodily substance is taken from that person for any reason, a portion of that sample sufficient for analysis shall be provided to a law enforcement officer if requested for law enforcement purposes.

Our supreme court has clarified the "for any reason" language of § 28–1388(E) to mean that the blood must be drawn by medical personnel for "medical purposes." *State v. Cocio,* 147 Ariz. 277, 286, 709 P.2d 1336, 1345 (1985).

¶ 7 After an evidentiary hearing, the trial court suppressed the BAC test results from the blood sample, finding that § 28–673(A) did not apply. The court further found that § 28–1388(E) did not apply because the officers had not had probable cause to believe that Estrada had violated the DUI statute and because Estrada had been transported to the hospital against his will by the medics, who, the court found, had become "an extension of law enforcement."

## Discussion

¶ 8 On appeal, the state does not challenge the trial court's ruling on the § 28–673(A) issue, and therefore we do not address that statute. Rather, the state argues only that the trial court erred in finding that the evidence was not properly obtained pursuant to § 28–1388(E). Estrada asserts that the trial court correctly determined that the police had lacked the requisite probable cause for § 28–1388(E) to apply, and further asserts that the trial court correctly found that the statute does not apply in any event because Estrada had been forcibly taken to the hospital.

¶ 9 Pursuant to § 28–1388(E), police must have probable cause to believe that a person

---

1. Section 28–1381 prohibits driving while under the influence of intoxicating liquor or drugs.

has violated the DUI statute in order to obtain a blood sample without a warrant. Were we to review this issue on appeal, we would apply the law to the facts de novo in determining whether probable cause existed. *See State ex rel. McDougall v. Superior Court,* 191 Ariz. 182, 953 P.2d 926 (App.1997). We do not reach this issue, however, because, regardless of whether the officers had the requisite probable cause, we agree with the trial court's ultimate conclusion that § 28–1388(E) does not apply when a person's blood has been drawn without a warrant solely as a result of having received medical treatment involuntarily.[2]

¶ 10 We first note that the state does not challenge the trial court's explicit factual finding that Estrada was transported to the hospital against his will. Nor does the state contest that a person has the right to refuse medical treatment, an implicit assumption underlying the trial court's ruling. Indeed, our supreme court has recognized this right as a matter of constitutional law. *Rasmussen v. Fleming,* 154 Ariz. 207, 741 P.2d 674 (1987); *see also Hales v. Pittman,* 118 Ariz. 305, 309, 576 P.2d 493, 497 (1978) (noting "the fundamental right of every adult of sound mind to determine what should be done to his [or her] body").

¶ 11 We believe it helpful to analyze § 28–1388(E) in the context of the legal scheme allowing warrantless blood draws in Arizona. The drawing of blood is a bodily invasion and, thus, constitutes a search under the Fourth Amendment. *State v. Jones,* 203 Ariz. 1, 49 P.3d 273 (2002); *see also Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). To comply with the Fourth Amendment's requirement that searches be reasonable, the police may obtain a suspect's blood sample if 1) they obtain a search warrant founded on probable cause, *Jones;* 2) the suspect consents either expressly, *Flannigan,* or implicitly to the blood draw, § 28–673(F) and A.R.S. § 28–1321(C);

or 3) exigent circumstances exist and the police have probable cause to believe the person violated the DUI statute. *Schmerber; Flannigan.* The legislature codified the third method in § 28–1388(E), which also requires that the blood be drawn by medical personnel for any medical reason. *Cocio.* The issue here is whether § 28–1388(E) applies when the person is receiving medical treatment against his or her will. We agree with the trial court that it does not.

¶ 12 In Arizona, a person operating a motor vehicle gives implied consent to a BAC test if he or she is arrested for violating the DUI statutes. § 28–1321(A). If a person revokes this implied consent, that is, refuses to submit to the test chosen by the law enforcement officer, § 28–1321(D)(1) provides that: "The test shall not be given, except as provided in § 28–1388, subsection E or pursuant to a search warrant." The penalty for refusing to submit to the test is mandatory suspension of the person's driver's license. A.R.S. § 28–1321(D)(2).

¶ 13 Estrada's situation does not involve § 28–1321. Rather, § 28–1388(E) applies. That statute is not based on implied consent and does not provide for a right to refuse to submit to a BAC test. Indeed, as long as the officer has probable cause and the suspect is receiving medical treatment and blood is drawn by medical personnel for any medical reason, § 28–1388(E) entitles the police to receive a sample of the blood drawn regardless of that person's consent to the blood draw itself. *See Flannigan.* We agree with the trial court, however, that an officer cannot obtain blood for law enforcement purposes under § 28–1388(E) when the person is subjected to medical treatment that the person has expressly rejected.

¶ 14 To construe the statute otherwise would enable an unscrupulous police officer to circumvent the right of refusal recognized in the implied consent statute by relying

**2.** We address here the situation when a person consciously and unambiguously refuses medical treatment for purposes of A.R.S. § 28–1388(E). In contrast, Arizona's implied consent law provides that

   [a] person who is dead, unconscious or otherwise in a condition rendering the person in-

capable of refusal is deemed not to have withdrawn the consent provided by subsection A of this section and the test or tests may be administered, subject to § 4–244, paragraph 33 or § 28–1381, 28–1382 or 28–1383.

A.R.S. § 28–1321(C); *see also* A.R.S. § 28–673(F).

instead on § 28–1388(E) to acquire a blood sample from a suspect. Thus, that person would have lost any opportunity to refuse to submit to the test. Similarly, an officer could first attempt to obtain a blood sample by using the implied consent statute, but, if the person refused, could then have the person forcibly taken to the hospital under the pretext of needing medical treatment in order to procure a blood sample without first obtaining a warrant. This would essentially render meaningless the right of refusal recognized in the implied consent statute because the officer could use § 28–1388(E) to obtain a blood sample regardless of the circumstances. Constitutional considerations aside, the statute does not clearly reflect any such legislative intent. *See State v. Viramontes,* 204 Ariz. 360, 64 P.3d 188 (2003) (court should construe statute to further legislative intent).

¶ 15 Accordingly, we hold that, when a person is receiving medical treatment against his or her will, the exception of § 28–1388(E) allowing blood draws without a warrant does not apply. In other words, if a person exercises his or her constitutional right to refuse medical treatment in the first place, and does so clearly and expressly, as Estrada did, he or she cannot be forced to accommodate law enforcement's desire for a blood sample.[3] The officer has other means to obtain a blood sample if probable cause exists; that is, the officer can obtain a search warrant. A.R.S. § 13–3913.

■■■■ ¶ 16 We must address one final issue, however, because, as the state points out, even a wrongful search or seizure by a private citizen does not violate the Fourth Amendment unless the citizen is acting as an agent of the state. *See Weekley; see also State v. Weinstein,* 190 Ariz. 306, 947 P.2d 880 (App.1997). In other words, unless the state or one of its agents was responsible for forcibly transporting Estrada to the hospital, then the resulting wrongful seizure of his blood sample does not violate the Fourth Amendment and the evidence need not be suppressed. *See Weinstein* (trial court did not err in denying motion to suppress be-

cause person who performed search was not state agent).

■■■■ ¶ 17 The trial court found that the medics had become state agents and that they, in concert with the police, had transported Estrada to the hospital against his will. Whether a private citizen acted as a state agent is determined on a case-by-case basis, and the inquiry focuses on a two-part test assessing the degree of government knowledge and acquiescence in the search or seizure and the intent of the party performing the search. *Id.; see also United States v. Walther,* 652 F.2d 788 (9th Cir.1981).

¶ 18 Here, with respect to the first part of that test, the degree of government participation in the seizure of the blood evidence, the record shows that the deputy restrained Estrada against his wishes and at the request of the medics, who expressed concern for their personal safety. One reasonable inference from the record is that the medics would not have transported Estrada to the hospital had the deputy not restrained him. We agree with the trial court that this level of police involvement in transporting Estrada was sufficient to meet the degree of governmental participation and encouragement necessary to meet the first part of the test. *See United States v. Reed,* 15 F.3d 928 (9th Cir. 1993) (police knowledge and indirect encouragement of private party search met first part of test).

¶ 19 As to the second part of the test, the crucial question is whether the medics were motivated by a desire to assist the police in obtaining the blood evidence or by a desire to obtain medical assistance for Estrada. *See Reed* (second part of test is whether the private party performing the search or seizure intended to assist law enforcement or further his or her own ends). The trial court stated that it was clear from the medics' testimony that "they knew law enforcement officers wanted [Estrada] taken in" and that "they knew that they needed to get blood samples." Based on this finding, the court implicitly further found that the medics were motivated by a desire to aid the police's

---

**3.** This would include a situation such as Estrada's, in which the person attempted to decline

medical treatment by refusing to go to the hospital.

efforts in obtaining a blood sample from Estrada when they transported him to the hospital against his will.

¶ 20 The state argues that these findings are erroneous and asserts that the medics were motivated solely by a desire to help Estrada. In support of this position, the state cites one of the medics' testimony that he had "never been involved in a situation" in which the police had asked him to transport a person specifically for the purpose of obtaining a blood sample and had not done so in this case. The trial court, however, apparently chose to disbelieve this testimony. In any event, whether this situation had occurred before or whether this was the first time is irrelevant.

¶ 21 Furthermore, one of the medics admitted he had discussed transporting Estrada with Sergeant Gowanlock, although the medic later clarified that he had told Gowanlock that Estrada needed to be taken to the hospital. Lastly, the record contains little evidence to support the medics' claim that Estrada's condition was such that he required medical assistance because of suspected head or internal injuries. Although Estrada did have some cuts or scrapes on his head, one of the medics admitted that he did not really suspect a serious neck injury. And, the other medic testified that their assessment, albeit a limited one, of Estrada did not reveal any serious, life-threatening injuries. Furthermore, Estrada's blood pressure did not give any indication that he had sustained internal injuries, and his pupils did not give any indication that he had sustained neurological damage.

¶ 22 Because the trial court was in the best position to observe the demeanor of the witnesses and determine their possible biases, we must defer to its assessment of their credibility and its rejection of the medics' testimony about their motives for transporting Estrada. *See State v. Gerlaugh*, 134 Ariz. 164, 654 P.2d 800 (1982), *supp. op.*, 135 Ariz. 89, 659 P.2d 642 (1983); *Ossana*. Furthermore, the trial court determines the weight to be given evidence presented at the suppression hearing. *See State v. Keener*, 110 Ariz. 462, 520 P.2d 510 (1974). Thus, under these circumstances where the trial judge unequivocally stated that the medics "actively became extensions of law enforcement," we find no error in the trial court's implicit finding that the medics were not motivated by a desire to obtain medical assistance for Estrada but, rather, by a desire to help the police obtain a blood sample from him.

### Conclusion

¶ 23 In sum, we construe § 28–1388(E) to implicitly require that a person must be receiving medical treatment voluntarily for that statute to allow a warrantless blood draw. We defer to the trial court's findings that Estrada was involuntarily transported to the hospital by state agents. Thus, we find no abuse of discretion in the trial court's conclusion that the results of Estrada's blood sample must be suppressed because the evidence was not properly obtained pursuant to a statutory exception to the warrant requirement of the Fourth Amendment. The trial court's suppression order is, therefore, affirmed.

CONCURRING: JOHN PELANDER, Chief Judge and J. WILLIAM BRAMMER, JR., Judge.

