JONES, J.,
dissenting in part:
¶ 40 In my view, the trial court applied the incorrect legal standard in denying the motion to suppress. Although the majority correctly notes there has never been any dispute that the State bears the burden of establishing “the lawfulness in all respects of the acquisition of all evidence which [it] will use at trial,” Ariz. R.Crim. P. 16.2(b), the question remains as to what the State must prove to admit blood evidence obtained pursuant to the “medical purpose” exception to *457 the warrant requirement, enumerated within A.R.S. § 28-1388(E). This provision allows law enforcement to obtain and test a sample of a person’s blood taken for medical purposes if probable cause exists to believe the person has violated Arizona’s DUI laws. See State v. Cocio, 147 Ariz. 277, 284, 709 P.2d 1336,1345 (1985); State v. Aleman, 210 Ariz. 232, 236, ¶ 11, 109 P.3d 571, 575 (App.2005). We have held that the statute does not apply “when a person is receiving medical treatment against his or her will.” State v. Estrada, 209 Ariz. 287, 291, ¶ 15, 100 P.3d 452, 456 (App.2004).
¶ 41 Here, the trial court admitted the challenged blood evidence after finding the State had proven Nissley’s actions “d[id] not constitute an express refusal to submit to medical treatment” in the manner “contemplated by Estrada.” The majority accepts this as the standard and defers to the trial court’s findings. However, a discussion limited to whether the rejection of medical treatment is unequivocal, and therefore sufficient to preserve the defendant’s constitutionally protected right to bodily integrity, is misleading and contrary to established Fourth Amendment jurisprudence. Predicating suppression of the blood evidence upon the sufficiency of a rejection of medical care upends the historical requirement of consent in the absence of a warrant. At a minimum, this relieves the State of its full burden of proving the admissibility of the blood evidence, and in application may result in a defacto shifting of the burden of proof to the defendant to prove the “adequacy” of his rejection, upon no greater evidence being presented than the suggestion by the State that the rejection was unclear or ambiguous. For these reasons, I would hold the proper inquiry is not whether the defendant was able to prove he adequately rejected medical care, but rather, whether he freely and voluntarily consented to medical treatment. See State v. Spencer, 235 Ariz. 496, 499, ¶ 12, 333 P.3d 823, 826 (App.2014). Even viewing the facts in the light most favorable to affirming the trial court’s order, the State did not present any evidence of consent. Therefore, I respectfully dissent from the majority’s conclusion that Nissley failed to demonstrate reversible error.
DISCUSSION
¶ 42 In State v. Estrada, we held the medical pui’pose exception does not apply “when a person is receiving medical treatment against his or her will.” 209 Ariz. at 291, ¶ 15, 100 P.3d at 456. Apparently guided by the specific facts of Estrada, where the defendant “changed his mind about going [to the hospital] voluntarily and became agitated and attempted to get out of the ambulance,” we attempted to further define the issue by adding: “In other words, if a person exercises his or her constitutional right to refuse medical treatment in the first place, and does so clearly and expressly ... he or she cannot be forced to accommodate law enforcement’s desire for a blood sample.” Id. at 289, 291, ¶ ¶ 4, 15, 100 P.3d at 454, 456. It is the “other words” the majority focuses upon in affirming the trial court’s denial of Nissley’s motion to suppress, see infra ¶ 9, and which the State relies upon in arguing its responsibility was “to show the defendant did not expressly reject treatment.” However, the two statements, while leading to the same result in Estrada, are not the same. In my view, it is the initial statement which was intended to fix the standard for determining the applicability of A.R.S. § 28-1388(E).
¶ 43 The phrase “against his will,” as articulated in Estrada, is admittedly problematic. Indeed, it is unworkable to require the State to prove medical treatment was “against the will” of the defendant; the State has no interest or incentive to offer proof illustrating the in applicability of the statute it is relying upon to establish the admissibility of its evidence. It would be equally inappropriate and unconstitutional to place the burden upon the defendant to prove the statutory exception to the warrant requirement does not apply, i.e., that the treatment was given “against his will.” See State v. Ault, 150 Ariz. 459, 464, 724 P.2d 545, 550 (1986) (“The burden is on the state when it seeks an exception to the warrant requirement.”) (citation omitted). And, because the parties in Estrada did not dispute that the defendant was transported to the hospital “against his will,” the opinion does not address what, precisely, the State must prove in order to *458 establish the admissibility of blood evidence obtained pursuant to A.R.S. § 28-1388(E).
¶44 The majority settles the semantical problem presented by the phrase “against his will” by allowing the State to proceed solely upon evidence that the defendant’s attempted rejection of medical care was insufficient. This interpretation is not consistent with the commonly understood meaning of the phrase “against the will,” which is typically used to indicate a lack of consent. See Large v. Superior Court, 148 Ariz. 229, 234, 714 P.2d 399, 404 (1986) (noting drugs administered to petitioner were “against his will” where he refused to consent to treatment); State v. Miguel, 125 Ariz. 538, 542, 611 P.2d 125, 129 (App.1980) (holding that consent is a defense to a crime that requires the State to prove a taking was “against the will” of the victim); Fonseca v. Hall, 568 F.Supp.2d 1110, 1131 (C.D.Cal.2008) (“[A] finding that the victims were confined against their will necessarily implied that the victims had not consented.”) (internal quotation and citation omitted); Against the Will, Black’s Law Dictionary (10th ed.2014) (noting “against the will” is used in indictments to indicate a lack of consent). Estrada itself suggests some lesser level of resistance would be sufficient, noting that its holding would apply to an “attemptn to decline medical treatment by refusing to go to the hospital” — something less than an express rejection of care. 209 Ariz. at 291 n. 3, ¶ 15, 100 P.3d at 456 n. 3.
¶ 45 More importantly, the majority’s approach conflicts with long-standing federal and state constitutional authority intended to protect persons from unreasonable bodily intrusion. This authority applies independent from the legislative direction contained in A.R.S. § 28-1388(E). State v. Butler, 232 Ariz. 84, 88, ¶ 18, 302 P.3d 609, 613 (2013). Indeed, in over two hundred years of Fourth Amendment jurisprudence, I am unaware of any court, in any jurisdiction, having ever upheld the validity of a warrantless intrusion premised purely upon the inadequacy of the defendant’s objection to the search; instead, courts have inerrantly required the State to affirmatively establish consent. See, e.g., United States v. Murphy, 516 F.3d 1117, 1124-25 (9th Cir.2008) (noting a “refusal to grant consent” effectively bars a warrantless search); Karwicki v. United States, 55 F.2d 225, 226 (4th Cir.1932) (“The fact that [the defendant] did not protest against the search of his living quarters is without significance. He was not required to protest. The officers had no right to search same without a warrant, unless they had his consent to the search.”); United States v. Lemer, 100 F.Supp. 765, 767 (N.D.Cal.1951) (declining to find consent where it was “apparent that the attitude of the defendant was one of protest rather than consent”). This Court recognized as much in State v. Spencer, which recently articulated the State’s burden, “as the party seeking to admit evidence seized without a warrant [and] establish^ ] the medical [purpose] exception’s applicability,” to include “demonstrating that ... consent [to medical treatment] was ‘freely and voluntarily given.’ ” 235 Ariz. at 499, ¶ 12, 333 P.3d at 826 (citing Butler, 232 Ariz. at 88, 1119, 302 P.3d at 613, and State v. Peterson, 228 Ariz. 405, 408, ¶ 9, 267 P.3d 1197,1200 (App.2011)). And requiring consent is consistent with statutory and judicially recognized exceptions to the warrant requirement. See A.R.S. § 28-1321(A) (implied consent); Butler, 232 Ariz. at 87, ¶ 13, 302 P.3d at 612 (2013) (recognizing “[e]onsent can also allow a warrantless search” in the context of blood drawn during a DUI investigation).
¶ 46 Yet, the trial court did not require the State to prove Nissley consented to medical treatment, and the State’s evidence objectively fails to establish consent. Whether consent is given is a question determined by the totality of the circumstances, State v. Paredes, 167 Ariz. 609, 612, 810 P.2d 607, 610 (App.1991) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 248-49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and State v. King, 140 Ariz. 602, 604, 684 P.2d 174, 176 (App.1984)), and an exception to the warrant requirement must be proven “ ‘by clear and positive evidence in unequivocal words or conduct expressing consent,’ ” State v. Canez, 202 Ariz. 133, 151, ¶ 53, 42 P.3d 564, 582 (2002) (quoting State v. Kananen, 97 Ariz. 233, 235, 399 P.2d 426, 427 (1965)); see also United States v. Shaibu, 920 F.2d 1423, 1427-28 (9th Cir. 1990) (“The consent [to a search] must be unequivocal and specific and freely and intel *459 ligently given.”) (internal quotations omitted). “Failing to actively resist or vocally object to a test does not itself constitute express agreement. Instead, ... the arrestee must unequivocally manifest assent to the [warrantless chemical] testing by words or conduct.”[8] Carrillo v. Houser, 224 Ariz. 463, 466-67, ¶ 19, 232 P.3d 1245, 1248-49 (2010) (holding actual consent is required prior to chemical testing initiated under A.R.S. § 28-1321 and noting the legislature’s clarification that a “failure to expressly agree constitutes a refusal” to take the test under A.R.S. § 28-1321(B)); see also Stoner v. California, 376 U.S. 483, 489, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (noting defendant could waive Fourth Amendment rights only “by word or deed”). Upon these principles, the trial court was tasked with determining whether the State met its burden of showing Nissley freely and voluntarily exhibited a manifestation of consent to medical treatment. Although the trial court acknowledged that the State had the burden of proof, it considered only the sufficiency of Nissley’s objection to medical treatment — ultimately determining that, while Nissley may have rejected, he did not reject enough.
¶ 47 The trial court’s conclusion that Nissley’s rejection was insufficient places in stark contrast the difference between requiring proof from the State that the defendant consented to medical treatment, and requiring proof that he “unambiguously, clearly and expressly rejected” treatment. The record is replete in its characterization of Nissley’s lack of consent, having been strapped to a backboard for placement in the ambulance, working his feet free, cursing and screaming as he tried to kick the emergency medical personnel to prevent them from putting him into the ambulance for transportation to the hospital, and wiggling his body furiously in an attempt to keep the paramedics from touching him or otherwise providing aid. The record indicates that from the moment emergency personnel arrived at the scene of the accident at approximately 5:40 p.m., until his forced sedation and subsequent blood draw nearly an hour later, Nissley was “extremely combative,” screaming “leave me alone,” “don’t touch me,” “I don’t want your help,” “I’m fine,” and “just go away,” interlaced with near-constant profanity and name-calling. There is no legal interpretation capable of being given this conduct or these phrases, especially when uttered to a paramedic actively attempting to render medical care, that stands apart from their ordinary everyday meaning, which would give rise to a finding of free and voluntary consent.[9] Yet, the trial court concluded, and the majority affirms, that these facts are insufficient to establish rejection of medical care.
¶48 Similarly, even accepting the trial court’s suggestion that Nissley may have been reacting to pain at the time he arrived at the hospital, an expression of pain does not equate to free and voluntary consent to medical treatment. See Rasmussen v. Fleming, 154 Ariz. 207, 216-17, 741 P.2d 674, 683-84 (1987); see also Hales v. Pittman, 118 Ariz. 305, 309, 576 P.2d 493, 497 (1978) (noting “the fundamental right of every adult of sound mind to determine what should be *460 done to his body”); see also Cruzan ex rel. Cruzan v. Dir. Mo. Dep’t of Health, 497 U.S. 261, 305-06, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990) (Brennan, J., dissenting) (noting “each man is considered to be master of his own body, and he may, if he be of sound mind, expressly prohibit ... medical treatment” and therefore the right to bodily integrity protects the right to decline even lifesaving treatment) (quotation and citations omitted). Nor can an eventual capitulation to the persistent demands of medical personnel qualify as “free” and “voluntary” submission to treatment. See Spencer, 235 Ariz. at 499-500, ¶ 15, 333 P.3d at 826-27; see also State v. Flannigan, 194 Ariz. 150, 153, ¶ 16, 978 P.2d 127, 130 (App.1998) (finding mere “ ‘acquiescence to a claim of lawful authority’ ” insufficient to meet burden of establishing a person consented to a search) (quoting Bumper v. North Carolina, 391 U.S. 543, 548-49, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968)). Yet, again, the trial court concluded, and the majority affirms, that the conduct was not an unambiguous rejection of medical care.
¶ 49 The concept of consent is materially different from that of rejection. I would find the trial court applied the wrong standard in determining the applicability of A.R.S. § 28-1388(E) and, in doing so, abused its discretion. State v. Mohajerin, 226 Ariz. 103, 108, ¶ 18, 244 P.3d 107, 112 (App.2010) (“When a trial court predicates its decision on an incorrect legal standard, ... it commits an error of law and thereby abuses its discretion.”) (citing State v. Mangum, 214 Ariz. 165, 167, ¶ 6, 150 P.3d 252, 254 (App.2007)). The test adopted by the trial court puts the cart before the horse, see United States v. Gray, 369 F.3d 1024, 1026-27 (8th Cir.2004) (considering whether defendant withdrew his consent only after recognizing that consent was originally granted), permits the State to introduce evidence obtained without a warrant based upon something less than the constitutionally required free and voluntary consent,[10] and arguably results in structural error, see State v. Glassel, 211 Ariz. 33, 53, ¶74, 116 P.3d 1193, 1213 (2005) (finding structural error where circumstance improperly reduces the state’s burden of proof) (citing Sullivan v. Louisiana, 508 U.S. 275, 280-82, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), and State v. Portillo, 182 Ariz. 592, 594, 898 P.2d 970, 972 (1995)); see also State v. Henderson, 210 Ariz. 561, 565, ¶ 12, 115 P.3d 601, 605 (2005) (defining structural errors as “those which ‘deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for guilt or innocence.’”) (quoting State v. Ring, 204 Ariz. 534, 552, ¶ 45, 65 P.3d 915, 933 (2003)), which cannot be harmless and need not have been raised below, see State v. Valverde, 220 Ariz. 582, 585, ¶ 10, 208 P.3d 233, 236 (2009) (“If an appellate court finds structural error, reversal is mandated regardless of whether an objection is made below or prejudice is found.”); see also United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936) (“In exceptional circumstances, especially in criminal eases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings.”).
CONCLUSION
¶ 50 In the absence of consent to medical treatment, freely and voluntarily given, the medical purpose exception does not apply. Given the record before us, the State did not prove by a preponderance of the evidence that Nissley freely and voluntarily consented to medical care.[11] Therefore, I would find *461 the warrantless seizure of Nissley’s blood was improper, vacate Nissley’s convictions and sentences, and remand for a new trial that does not include evidence derived from the blood draw.
¶ 51 I appreciate the concerns of the majority regarding the challenges faced by law enforcement in assessing available alternatives to gather what may be time-sensitive evidence. See supra ¶ 36 n. 5. However, “a grudging or negative attitude by reviewing courts toward warrants ... is inconsistent with the Fourth Amendment’s strong preference for searches conducted pursuant to a warrant.” Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Constitutional protections are not subject to exception simply for the convenience of a criminal investigation, see, e.g., United, States v. Taylor, 934 F.2d 218, 220 (9th Cir.1991) (“We recognize that individual interests outrank government convenience in the fourth amendment balancing.”) (citing United States v. Martinez-Fuerte, 428 U.S. 543, 557-58, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976)), and our supreme court has rejected the notion that requiring law enforcement officers to obtain warrants for blood draws is unduly burdensome, Butler, 232 Ariz. at 87, ¶ 11, 302 P.3d 609 (“In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so.’ ”) (quoting Missouri v. McNeely, — U.S. -, 133 S.Ct. 1552, 1561, 185 L.Ed.2d 696 (2013)). Moreover, while consideration of the degree of rejection is subjective, the concept of consent is not subject to a continuum; consent is either given or it is not. See Illinois v. Rodriguez, 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (holding factual determination of consent must be judged against an objective standard) (citing Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); People v. Smith, 638 P.2d 1, 6 (Colo.1981) (“Whether consent existed at the relevant time is an objective fact.”) (citing People v. Edmonds, 195 Colo. 358, 578 P.2d 655 (1978)). The objective standard advanced herein will only assist law enforcement in the fair and orderly collection and preservation of evidence.
¶ 52 I agree with the trial court’s conclusion that probable cause existed to believe Nissley had violated A.R.S. § 28-1381. Based upon such probable cause, and where there was any question as to the applicability of A.R.S. § 28-1388(E), the officers could and should have secured a warrant to obtain a sample of Nissley’s blood.
¶ 53 For these reasons, I respectfully dissent.

. An eloquent and detailed statement of refusal is not and cannot be required to overcome the State's burden of showing free and voluntary consent. The necessity of uttering a specific phrase at the precisely correct moment would create an artificial predicate to finding a refusal that is neither mandated by, nor consistent with, the broad protections against bodily invasion contained within the U.S. and Arizona Constitutions. See United States v. Ramirez, 79 F.3d 298, 304 (2d Cir.1996) ("A suspect need not rely on talismanic phrases or any special combination of words to invoke his Fifth Amendment right to remain silent.”) (cited with approval by State v. Cota, 229 Ariz. 136, 145, ¶26, 272 P.3d 1027, 1036 (2012)). Under some circumstances, a verbal announcement may not be necessary or even possible, and our supreme court has already recognized that active resistance and vocal objections are not necessary to negate consent. Carrillo, 224 Ariz. at 466-67, 1119, 232 P.3d at 1248-49. It necessarily follows that such activity is, at a minimum, affirmative evidence of a lack of consent.

. The majority implicitly recognizes the lack of evidence to establish Nissley’s consent to medical treatment by limiting its use of the word "consent” to a discussion of inapplicable alternatives to A.R.S. § 28-1388(E), supra ¶¶ 22, 38 n. 6, and a parenthetical explanation of revocation, supra ¶ 31, instead focusing its attention entirely upon the conclusion that "Nissley did not unambiguously, clearly and expressly reject medical care,” supra n 22, 31-35, 38.

. Requiring the State to prove a defendant consented to medical treatment in order to admit evidence obtained pursuant to A.R.S. § 28-1388(E) would not affect the admissibility of bodily evidence obtained from an unconscious driver. See supra ¶ 38 n. 6. Under A.R.S. § 28-1321(A), the unconscious driver has already given consent to chemical testing under certain circumstances when he operates a motor vehicle in this state and is incapable of revoking that consent under A.R.S. § 28-1321(C). Where the State chooses to proceed under this section, it need not separately prove consent to medical treatment.

. The State argues a defendant must show it had some hand in forcing unwanted medical care upon him before the blood evidence can be suppressed. To read an additional requirement into the statute would run contrary to the legislature's chosen language, which articulates only *461 the need for probable cause and a blood draw resulting from medical treatment voluntarily received. See A.R.S. § 28-1388(E); Spencer, 235 Ariz. at 499, ¶ 12, 333 P.3d at 826. And the law is express: in the absence of these elements, implied consent, or a warrant, "the [blood] test shall not be given.” A.R.S. § 28-1321(A), (D)(1) (emphasis added). Given the clear statutory language, it is unsurprising no argument or evidence was presented at the suppression hearing, and the trial court made no findings, regarding law enforcement's willingness to allow Nissley to be removed from the accident scene, despite his protests, and transported to the hospital to receive medical treatment.