NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

CORNELL WILSON, JR., *Appellant.*

No. 1 CA-CR 15-0626
FILED 8-30-2016

---

Appeal from the Superior Court in Maricopa County
No. CR2014-108204-001
The Honorable Charles Donofrio III, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric Knobloch
*Counsel for Appellee*

Maricopa County Legal Defender's Office, Phoenix
By Cynthia D. Beck
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Jon W. Thompson joined.

_____

**K E S S L E R**, Judge:

¶1        Cornell Wilson, Jr. was tried and convicted for four counts of aggravated driving or actual physical control of a motor vehicle while under the influence of intoxicating liquor or drugs, non-dangerous, class 4 felonies with four prior felony convictions.  On appeal, Wilson argues that the superior court abused its discretion when it denied Wilson's motion to dismiss or suppress blood evidence and the prosecutor's misconduct during trial deprived Wilson of due process.  For the reasons that follow, we affirm Wilson's convictions and sentences.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        Department of Public Safety Trooper L, on duty around the I-17 and milepost 227, observed a vehicle being driven erratically and after following it for several miles, activated his emergency lights and siren.  The vehicle responded slowly, went past an exit, and abruptly stopped in the middle of the road, so Trooper L told the driver to pull over onto the nearby frontage road.  Trooper T arrived at the scene soon after Trooper L made contact with the vehicle and observed the subsequent events.

¶3        Trooper L walked up to the car, noticed the windows were tinted extremely dark, and knocked on the back window.  The driver opened the front door and Trooper L smelled a strong odor of alcohol coming from inside the vehicle.  He identified Wilson as the driver and noticed Wilson was disoriented and fumbled with his keys; moments later Wilson locked his keys in the vehicle.

¶4        Trooper L noticed Wilson's slurred speech and bloodshot, red, and watery eyes—both signs of impairment.  He told Wilson the reason he pulled him over, and smelled alcohol on Wilson's breath.  Wilson told Trooper L that he was going to Phoenix; however, he was traveling northbound toward Flagstaff.  Then, Wilson told Trooper L: "We both know I shouldn't be driving.  My license is suspended.  Just take me to jail." Trooper L asked Wilson for his driver's license, and Wilson handed him an

Arizona Identification Card. Wilson knew his license was suspended. Trooper L also asked Wilson if he consumed any alcoholic beverages and Wilson replied that he had consumed four to five beers thirty minutes prior.

¶5 Trooper L then administered standardized field sobriety tests. First he administered the Horizontal Gaze Nystagmus, and received all six clues of nystagmus on Wilson. Wilson refused to do the other two standardized field sobriety tests and exclaimed: "Just, look, just arrest me, man. We both know I'm drunk." Trooper L then arrested Wilson and transported him to the Sheriff's Office at Anthem.

¶6 At the Sheriff's Office, Trooper L told Wilson that Arizona law required him to submit to a breath or blood test, but he refused. Trooper L. then obtained a warrant and Trooper T, a phlebotomist, drew Wilson's blood. Trooper T attempted to draw two vials of blood; one vial for testing and one to provide to the defendant for his own testing. Trooper T was able to draw one full vial of blood and only a flash of blood in the second vial. Trooper T understood that under DPS guidelines, he should not draw any more blood after two unsuccessful attempts. He sealed the blood that he was able to draw in a blood kit box. Trooper L then read Wilson his *Miranda*[1] rights. The blood testing showed that Wilson had a BAC of 0.150.[2] Using retrograde analysis, the evidence showed that within two hours of driving, Wilson's BAC was most likely in the range of 0.172 to 0.217.

¶7 The jury returned a guilty verdict on all four counts. At sentencing, the superior court found that the State's allegations of four prior felony convictions were proven. The court sentenced Wilson to presumptive, concurrent sentences of ten years of imprisonment for each count, with seventy-six days of presentence incarceration credit.

¶8 Wilson timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2003), 13-4031 (2010), and -4033(A)(1) (2010).

**DISCUSSION**

---

[1]     *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]     The person testing the samples determined that it would take approximately six standard drinks for someone of Wilson's height and weight to reach that blood alcohol concentration.

I.      **Motion to Suppress Blood Evidence**

¶9          Wilson argues that the superior court abused its discretion when it denied Wilson's motion to suppress the blood evidence.  He argues that Trooper T's affirmative conduct prevented the preservation of an untested sample, therefore Trooper T should have been required to advise Wilson that he had a right to an independent test.  Because he was not told about that right, he argues the court should have granted his motion to dismiss for the violation of his due process right to obtain exculpatory evidence, and that the resulting convictions and sentences should be reversed.

        A.      Relevant Facts

¶10         Before trial, Wilson moved to dismiss or suppress all blood evidence pursuant to Arizona Rules of Criminal Procedure ("Rule") 16.2 based on an alleged violation of his right to gather independent evidence of sobriety.  The State responded that more than enough blood remained in the vial for Wilson to obtain an independent test and that Arizona law does not require police to inform DUI suspects of their right to independent testing.

¶11         At the evidentiary hearing, the State stipulated that no one advised Wilson of his right to have an independent test.  Trooper T testified that on his first attempt to draw blood from Wilson, he did not get inside the vein.  On his second try, he drew one full vial but Wilson was pulling his arm away, and when he inserted the second vial, there was a flash of blood and the blood stopped.  Trooper T believed Wilson was playing games to keep him from drawing blood.  At that point, he elected to stop the draw.  He did not call another phlebotomist to draw more blood because it would have taken another hour or more for someone to show up.

¶12         KZ, who conducted the lab tests, testified that contamination in the single vial of Wilson's blood was highly unlikely due to her methods.  She said that every time she retested a sample, she received consistent results.  KZ used between one to two milliliters of blood for the test and left at least seven milliliters remaining.  She testified that the remaining blood was enough for a defendant to retest the blood.  She would be comfortable retesting Wilson's blood from the remaining blood in the one vial.  MG, a defense forensic toxicologist, testified that to get a true independent analysis, a sample should be collected contemporaneously with the first sample that has been sealed, unopened, and unused by another laboratory.  KZ testified again that she only handled one blood sample at a time, never

mixed any control solutions into Wilson's blood that may have contained ethanol, and never poured anything at all into his blood.

¶13 The superior court denied Wilson's motion to dismiss or suppress the blood evidence. It held that neither statutes nor case law supported the defense's position that a defendant has a right to have a second vial of blood unopened by the criminalist to test in order to have an independent blood test. It also held the testimony did not support the claim that Wilson was denied an independent blood draw.

### B. Standard of Review

¶14 We will not disturb a superior court's ruling on a motion to suppress absent a clear abuse of discretion. *State v. Carter*, 145 Ariz. 101, 110 (1985). We only consider the evidence presented at the evidentiary hearing and view that evidence in the light most favorable to upholding the superior court's ruling. *State v. Estrada*, 209 Ariz. 287, 288, ¶ 2 (App. 2004). "We defer to the trial court's factual findings that are supported by the record and are not clearly erroneous." *Id.* (quoting *State v. Rosengren*, 199 Ariz. 112, 116, ¶ 9 (App. 2000)). The trial court determines the credibility of the witnesses, but we review de novo the trial court's legal conclusions and issues of statutory interpretation. *Estrada*, 209 Ariz. 287 at 288, ¶ 2.

### C. Analysis

¶15 Wilson argues the police officers interfered with his due process right to obtain an independent sample of his blood because they should have told him of his right to an independent test given that there was not a second vial of blood for him to test. We disagree.

¶16 A DUI suspect has a "due process right to gather exculpatory evidence." *State v. Olcan*, 204 Ariz. 181, 183, ¶ 8 (App. 2003). As codified in the relevant statute A.R.S. § 28-1388(C) (1999):

> The person tested shall be given a reasonable opportunity to arrange for any physician, registered nurse or other qualified person of the person's own choosing to administer a test or tests in addition to any administered at the direction of a law enforcement officer. The failure or inability to obtain an additional test by a person does not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer.

However, "[w]e have consistently held that police are not obliged to inform DUI suspects of their right to independent testing." *State v. Superior Court In and For Cnty. of Yavapai (Norris)*, 179 Ariz. 343, 345 (App. 1994). *See also Van Herreweghe v. Burke*, 201 Ariz. 387, 390, ¶ 10 (App. 2001) ("Petitioner's lack of knowledge is not a barrier erected by the State in the defendant's path to independent testing."); *State v. Ramos*, 155 Ariz. 153, 156 (App. 1987) ("Failure of the officer to inform the [DUI] suspect of his right to an independent test does not constitute interference with the ability to get an independent test."). Further, "[p]olice officers are not required to take the initiative or even assist in procuring any evidence on behalf" of a DUI suspect. *Smith v. Cada*, 114 Ariz. 510, 512 (App. 1977).

¶17        The only Arizona case that found a duty to inform a DUI suspect of his or her right to an independent test is *Montano v. Superior Court*, 149 Ariz. 385 (1986). However, *Montano* involved a unique set of circumstances "where the arresting officers did not have access to a breathalyzer and did not invoke implied consent." *Norris*, 179 Ariz. at 345. This situation resulted in a narrow exception to the general rule and is limited to its factual situation. *Id.* As we explained in *Ramos*, 155 Ariz. at 155, "absent the unique conditions in *Montano* no Arizona court has ever held that a DWI suspect must be told of his right to get an independent test." "Had the legislature intended to create such a requirement, we are confident that it could and would have done so." *Norris*, 179 Ariz. at 347.

¶18        We find no exception to this rule simply because the State was not able to draw a second vial of blood for use by Wilson. *Montano* is limited to the situation where the State takes no blood or breath samples, thus requiring the State to inform the defendant of his right to have a test done to refute the State's subjective evidence of inebriation. Here, a usable amount of blood sample was taken and used as evidence. Wilson's ability to test that sample does not affect whether the police have to tell him of his right to an independent draw and test. Further, Wilson's failure to obtain an additional test "does not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer." A.R.S. § 28-1388(C).

¶19        Wilson argues Trooper T's affirmative conduct prevented the preservation of an untested sample, implying that Trooper T interfered with Wilson's right to obtain an independent sample. The State may not unreasonably interfere with a defendant's efforts to obtain an independent sample. *Olcan*, 204 Ariz. at 184, ¶ 12. Unreasonable interference occurs when police deny a suspect access to counsel, *McNutt v. Superior Court*, 133 Ariz. 7, 9 (1982); unreasonably deny a suspect bail release, *State v. Ganske*,

114 Ariz. 515, 516-17 (App. 1977) (holding that interference with Ganske's right to obtain independent evidence was "painfully clear" because his bail effort was experiencing inordinate delay); or unreasonably delay the transportation of a defendant to a hospital to obtain independent testing. *Amos v. Bowen*, 143 Ariz. 324, 328 (App. 1984).

**¶20** Trooper T's actions do not constitute unreasonable interference with Wilson's right to obtain an independent sample. Viewing the evidence in the light most favorable to affirming the superior court, *Estrada*, 209 Ariz. at 288, ¶ 2, Trooper T elected to stop drawing Wilson's blood because Wilson appeared to be playing games with him and because the blood just stopped flowing. Although Trooper T did not obtain two vials of Wilson's blood, Wilson does not cite any authority the police were required to take two samples. Further, Wilson was always free to conduct an independent test. He was read his *Miranda* rights and therefore could have contacted counsel to receive information on his right to an independent draw and testing. Alternatively, there is evidence in the record that any independent testing of the remaining State's sample would not have affected the results of that testing. The troopers did not deny Wilson access to counsel, bail release, or unreasonably delay transportation to receive independent testing. Therefore, the superior court did not abuse its discretion when it denied Wilson's motion to suppress the blood evidence or dismiss the case because the officers did not interfere with Wilson's due process right to obtain an independent sample.

## II. **Prosecutorial Misconduct**

**¶21** Wilson argues he is entitled to a reversal of convictions and sentences due to prosecutorial misconduct. He argues that the prosecutor vouched for the troopers' credibility in her closing argument and impugned defense counsel throughout her arguments to the jury. The cumulative effect of the misconduct, Wilson argues, "so permeated the atmosphere of the trial that it functioned to deprive Wilson of a fair trial."

### A. Standard of Review

**¶22** Because the superior court is in the best position to determine the effect of a prosecutor's comments, we will not disturb a superior court's ruling unless there exists a clear abuse of discretion. *State v. Newell*, 212 Ariz. 389, 402, ¶ 61 (2006). To warrant a reversal, the misconduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (quoting *State v. Lee*, 189 Ariz. 608, 616 (1997)). A defendant must show (1) misconduct is present and (2) a reasonable likelihood exists

that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial. *State v. Moody*, 208 Ariz. 424, 459, ¶ 145 (2004). If the defendant objected to the misconduct, we will only reverse for harmless error. *State v. Martinez*, 230 Ariz. 208, 214, ¶ 25 (2012). If the defendant failed to object to the alleged misconduct, we review the matter for fundamental error, with the defendant having the burden to show prejudice. *Id.*

>B.      Vouching

**¶23**          Wilson argues that the prosecutor twice vouched for the troopers' credibility in her rebuttal closing argument. Vouching has two forms: "(1) where the prosecutor places the prestige of the government behind its [evidence] [and] (2) where the prosecutor suggests that information not presented to the jury supports the [evidence]." *Newell*, 212 Ariz. at ¶ 62, (quoting *State v. Vincent*, 159 Ariz. 418, 423 (1989)). Wilson argues that the misconduct falls into both categories. He argues the prosecutor placed the prestige of the government behind the law enforcement witnesses when she argued the troopers had no motivation to lie because their careers would be on the line. He also argues there was no evidence admitted at trial that suggested the troopers faced disciplinary action.

**¶24**          At trial, the defense counsel stated to the jury:

>Perhaps he [Trooper L] smelled alcohol. Perhaps he saw bloodshot, watery eyes. I don't know if you can see from the distance you're sitting at, but Mr. Wilson'[s] eyes are always bloodshot and watery. And so to assume that they're bloodshot and watery because he's consumed alcohol, they're just assumptions by the officer.

The prosecutor objected on the basis of vouching, and the superior court sustained the objection.

**¶25**          Later, the defense counsel questioned, "Does [Trooper T] have motive to lie . . . what else are they making a mistake or lying about in this case?" In her rebuttal argument, the prosecutor stated to the jury:

>And the defense lawyer wants you to believe that the only explanation for how you heard about that statement is that the officer either wrote it down wrong or that he's lying? Really? He's just making it up. He's going to risk his career

and his livelihood to pin this defendant with a DUI, this person that he's never met before in his life? Really?

The defense counsel objected on the basis of vouching, but the court overruled the objection. The prosecutor continued to argue, "Why would these officers risk their livelihood, risk their jobs and commit perjury?" The defense counsel again unsuccessfully objected on the basis of vouching.

¶26 "[P]rosecutorial comments which are fair rebuttal to areas opened by the defense are acceptable." *State v. Hernandez*, 170 Ariz. 301, 307-08 (App. 1991). The statements must be considered in context. *State v. Ramos*, 235 Ariz. 230, 238, ¶ 28 (App. 2014). Further, rhetorical questions do not rise to the level of misconduct. *Id.* at ¶ 30. For example, in *Ramos* we held the following rhetorical questions did not rise to the level of misconduct: "[W]hat motive would the police have to lie in a case like this?" and "[W]hat motive would they have to lie or fabricate any evidence?" 235 Ariz. at ¶ 30.

¶27 We conclude there was no prosecutorial misconduct. The prosecutor's questions regarding Trooper T risking his career were responses to the defense counsel's question of whether Trooper T had motivation to lie. The prosecutor's statements were a fair rebuttal to the defense counsel's discussion of lying officers, of which the defense counsel first opened the door. Further, several of the prosecutor's questions were similar to rhetorical questions in *Ramos* and therefore do not rise to the level of misconduct.

¶28 Even if the prosecutor's conduct rose to the level of misconduct, there must a reasonable likelihood that the misconduct could have affected the jury's verdict. *Moody*, 208 Ariz. at ¶ 145. Wilson argues that because the objections were overruled, the jury considered evidence that it should not have: that the troopers would have lost their jobs if "their version of the events was untrue." But, we presume the jury follows the superior court's instructions. *Newell*, 212 Ariz. at 403, ¶ 68. The court instructed the jury to determine the facts only from the evidence produced in court, and that evidence is witness testimony and exhibits introduced in court. It also instructed that comments by counsel are not evidence. There is no evidence that the jury did not follow the jury instructions. Thus, Wilson's argument is unconvincing. We find no prosecutorial misconduct in the form of vouching.

C.      Impugning Defense Counsel

**¶29**      Wilson also argues that the prosecutor impugned defense counsel by setting "the theme of denigrating the defense as a 'distraction from the truth' right from the beginning of her argument to the jury." He argues that she repeated sarcastic and denigrating comments throughout the rebuttal closing argument, making it clear she was impugning Wilson's counsel. Further, he argues that the prosecutor's remarks went to the heart of his defense and "sought to cast him as a conspirator in defense counsel's theater of 'distraction.'" He contends the prosecutor's "[portrayal of] the defense team as trying to deceive the jury while the State is just telling the jury the truth" affected the jury's verdict.

**¶30**      In her rebuttal closing argument, the prosecutor stated, "Now [Wilson] thinks that if he can distract you enough from the truth that you're not going to hold him accountable for his choices." Later, she stated, "Here's an explanation that the defendant – I'm sorry – the defense lawyer conveniently didn't consider." She continued: "Now the defense lawyer wants you to believe that because maybe, in some realm of possibility, no matter how remote, it's possible that this instrument gave two false positives in a row, that that's reasonable doubt. That is not reasonable doubt. That's desperation."

**¶31**      Because the defense failed to object to this conduct, we review for fundamental error. Prosecutorial misconduct must permeate the entire atmosphere of the trial. *Newell*, 212 Ariz. at 402, ¶ 61. A jury argument that impugns the integrity or honesty of opposing counsel is improper. *State v. Hughes*, 193 Ariz. 72, 86, ¶ 59 (1998). However, the "proper subject" of closing argument is to criticize defense theories and tactics. *Ramos*, 235 Ariz. at ¶ 25 (quoting *United States v. Sayetsitty*, 107 F.3d, 1405, 1409 (9th Cir. 1997)). Prosecutors have "wide latitude in presenting their closing arguments to the jury." *Ramos*, 235 Ariz. 237, at ¶ 22 (quoting *State v. Jones*, 197 Ariz. 290, 305, ¶ 37 (2000)). When the prosecutor's comments are not directed at the defense attorney, the state does not impugn the defense counsel. *State v. Velazquez*, 216 Ariz. 300, 312, ¶ 52 (2007). But, we are concerned with the prosecutor's comments when they "suggest to the jury that defense counsel is being deceitful." *State v. Denny*, 119 Ariz. 131, 134 (1978).

**¶32**      Some of the prosecutor's statements were borderline improper because she pointed directly to the defense counsel acting in desperation. Closing arguments are to criticize defense theories, not defense counsel. However, because prosecutors have such wide latitude,

we find that the prosecutor's statements do not amount to prosecutorial misconduct.

¶33        Further, Wilson still has the burden of showing that absent improper comments, a reasonable jury could have reached a different result. *Ramos*, 235 Ariz. at 236, ¶ 18. This is an especially hard burden to meet when the misconduct was not persistent and pervasive and the evidence of the defendant's guilt was overwhelming. *State v. Morris*, 215 Ariz. 324, 339, ¶ 67 (2007). Wilson has not shown prejudice. Only one statement was made which can be considered impugning the honesty of defense counsel, the court instructed the jury that closing arguments are not considered evidence, and the evidence of Wilson's guilt was overwhelming given his confessions to being drunk and the laboratory tests. Wilson has not shown that the jury failed to follow the court instructions and instead considered the prosecutor's statements as evidence.

¶34        We do not condone the prosecutor's statements and encourage the prosecutor to avoid ad hominem attacks against opposing counsel. However, the attack was not pervasive, the jury is presumed not to have considered it and it did not affect the jury verdict given the evidence presented. Accordingly, there was no prosecutorial misconduct requiring a mistrial or reversal.

## CONCLUSION

¶35        For the reasons stated above, we affirm Wilson's convictions and sentences.



Amy M. Wood • Clerk of the court
FILED:   AA

11