IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

VI ANN SPENCER, *Appellant.*

No. 1 CA-CR 13-0804
FILED 09-11-2014

Appeal from the Superior Court in Yavapai County
No. V1300CR201280372
The Honorable Jennifer B. Campbell, Judge

**VACATED AND REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist
*Counsel for Appellee*

Craig Williams, Attorney at Law, P.L.L.C., Prescott Valley
By Craig Williams
*Counsel for Appellant*

**OPINION**

Judge Margaret H. Downie delivered the opinion of the Court, in which Presiding Judge Samuel A. Thumma and Judge Maurice Portley joined.

**D O W N I E**, Judge:

¶1        Vi Ann Spencer appeals her convictions for aggravated driving under the influence ("DUI").  She contends evidence about her blood alcohol concentration ("BAC"), obtained from a medical blood draw, should have been suppressed.  We agree because Spencer did not voluntarily consent to the treatment that led to the blood draw.  We therefore vacate Spencer's convictions and remand for a new trial that does not include evidence derived from the medical blood draw.

## FACTS AND PROCEDURAL HISTORY

¶2        Spencer was driving when she swerved off the roadway and hit a guardrail.  K.M., who was driving behind Spencer, stopped to check on her.  K.M. drove Spencer to a fire station, where Spencer advised she had suffered a seizure.  Fire station personnel urged Spencer to go to the hospital, but she refused.

¶3        While Spencer was at the fire station, Deputy Franklin arrived to investigate the accident.  He noted that Spencer had difficulty answering questions, displayed "slurred and very slow" speech, and appeared "unfocused" and "generally impaired."  The deputy was concerned that Spencer "may possibly be under the influence of alcohol or some type of intoxicating substance" or that "she may have some medical issues from a possible seizure."  In speaking with Spencer, Deputy Franklin noted "a slight odor of intoxicating beverage."  Spencer refused to go to the hospital, perform field sobriety tests, or blow into a portable breath test device.  Deputy Franklin testified that the odor of alcohol "was slight and I wasn't sure, 100 percent, that I was looking at just the DUI.  I was very concerned that this was a medical issue."

¶4        When Spencer continued to refuse medical treatment, Deputy Franklin told her "she could either go to the hospital and get checked out medically or I would take her to the jail and begin a DUI investigation."  When asked why he gave Spencer this ultimatum, the deputy responded:  "Because of her general demeanor. I felt sure that she was either, A, suffering a medical problem or, B, intoxicated."  Rather than face arrest, Spencer agreed to go to the hospital and was transported there by ambulance.

¶5        When Deputy Franklin arrived at the hospital, medical personnel were evaluating Spencer.  The deputy advised that "if they

2

were going to do a blood sample that [he] would like a sample of it." Hospital staff drew Spencer's blood and gave Deputy Franklin a sample. Subsequent testing revealed a BAC of .296%.

¶6            Spencer was charged with three counts of aggravated DUI while on a suspended license: (1) with a BAC above .20%; (2) with a BAC above .08%; and (3) while impaired to the slightest degree, each a class four felony.  Spencer filed a motion to suppress, arguing the BAC evidence was obtained without a warrant and in violation of her constitutional rights.  After an evidentiary hearing, the superior court denied the motion.  Spencer then waived her right to a jury trial and submitted the case to the court for a determination of guilt based on a stipulated record.  The court found her guilty of counts one and three but dismissed count two as a lesser-included offense of count one. The court sentenced Spencer to five months' imprisonment and five years' probation but stayed the prison term pending the outcome of this appeal.

¶7            Spencer timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

¶8            We review the denial of a motion to suppress for an abuse of discretion, considering only the evidence presented at the suppression hearing.  *State v. Peterson*, 228 Ariz. 405, 407, ¶ 6, 267 P.3d 1197, 1199 (App. 2011); *State v. Gay*, 214 Ariz. 214, 223, ¶ 30, 150 P.3d 787, 796 (App. 2007). We review *de novo* any mixed questions of law and fact or legal conclusions.  *State v. Estrada*, 209 Ariz. 287, 288, ¶ 2, 100 P.3d 452, 453 (App. 2004); *State v. Wyman*, 197 Ariz. 10, 13, ¶ 5, 3 P.3d 392 (App. 2000).

¶9            A blood draw constitutes a search under the Fourth Amendment.  *Estrada*, 209 Ariz. at 290, ¶ 11, 100 P.3d at 455.  Law enforcement may obtain a blood sample if: (1) a warrant based on probable cause is obtained; (2) the suspect consents; or (3) exigent circumstances exist and officers have probable cause to believe the person has committed a DUI offense.  *Id.*  The legislature has codified the third method in A.R.S. § 28-1388(E), which provides, in relevant part:

> [I]f a law enforcement officer has probable cause to believe that a person has violated § 28-1381 and a sample of blood, urine or other bodily substance is taken from that person for any reason, a portion of that sample sufficient for analysis

3

shall be provided to a law enforcement officer if requested
for law enforcement purposes.

This Court has interpreted § 28-1388(E) to mean that if officers have probable cause, the blood is "drawn by medical personnel for any medical reason," *and* the suspect has consented to "receiv[e] medical treatment voluntarily," law enforcement may obtain a sample of the blood drawn. *Estrada*, 209 Ariz. at 290, 292, ¶¶ 13, 23, 100 P.3d at 455, 457.

**¶10**      Spencer contends suppression of the blood evidence was required because: (1) there was no probable cause to believe she had committed a DUI offense; (2) the evidence did not establish that hospital staff drew her blood for medical purposes; and (3) her consent to medical treatment was not voluntary.   Because the voluntariness issue is dispositive, we assume, without deciding, that probable cause existed and that the blood draw was performed by hospital staff for medical purposes.

**¶11**      According to Spencer, the medical treatment she received was not voluntary because Deputy Franklin gave her an ultimatum: either go to the hospital or be arrested.  In responding to the suppression motion, the State conceded the accuracy of Spencer's factual claim, stating:

> [T]he deputy told the defendant she needed to go to the hospital.  The defendant again refused to go to the hospital.  The deputy told the defendant if she did not go to the hospital he was going to have to arrest her and attempt to determine what was wrong with her because of her obvious level of impairment. *The defendant then chose to go to the hospital rather than being arrested.*  (Emphasis added).[1]

Deputy Franklin's testimony at the evidentiary hearing confirmed this version of events:

> Q.  And at that time you asked her or you told her that if she didn't go to the hospital, you were going to have to arrest her and attempt to determine what was wrong?
>
> A.  That's correct.

---

[1]      The State further conceded that if the court concluded Spencer "obtained medical treatment at the hospital against her will, the evidence resulting from the blood draw shall be suppressed."

Q. So you gave her the choice of either you arresting her or going to the hospital?

A. That's correct.

Q. So those were her only choices that you were providing to her at that time?

A. That's correct.

Q. That's the only time she agreed to go to the hospital?

A. That is correct.

¶12 The medical blood draw exception to the warrant requirement does not apply "when a person is receiving medical treatment against his or her will." *Id.* at 291, ¶ 15, 100 P.3d at 456. The State, as the party seeking to admit evidence seized without a warrant, had the burden of establishing the medical blood draw exception's applicability to these facts. *See State v. Fisher*, 141 Ariz. 227, 237, 686 P.2d 750, 760 (1984) (warrantless searches are *per se* unreasonable, and "[t]he burden is on the party seeking the exemption to show the need for it."). This burden includes demonstrating that Spencer's consent was "freely and voluntarily given." *See, e.g., State v. Butler*, 232 Ariz. 84, 88, ¶ 19, 302 P.3d 609, 613 (2013) (discussing consent to search); *State v. Peterson*, 228 Ariz. 405, 408, ¶ 9, 267 P.3d 1197, 1200 (App. 2011) (State's burden to prove voluntariness of statements).

¶13 In *Estrada*, the trial court suppressed blood draw evidence, and this Court affirmed. *Estrada*, 209 Ariz. at 288, ¶ 1, 100 P.3d at 453. Estrada had initially agreed to go to the hospital, but changed his mind en route, and "became agitated and attempted to get out of the ambulance." *Id.* at 289, ¶ 4, 100 P.3d at 454. A police officer arrived, and Estrada was handcuffed and shackled to the gurney "at the request of . . . medics because of safety concerns." *Id.* at 289, ¶ 5, 100 P.3d at 454. Hospital staff drew Estrada's blood and gave a sample to law enforcement. *Id.* On appeal, we concluded that the § 28-1388(E) exception does not apply "when the person is subjected to medical treatment that the person has expressly rejected." *Id.* at 290, ¶ 13, 100 P.3d at 455. Such an interpretation is necessary, we held, to prevent officers from

5

circumventing the warrant requirement or a suspect's right of refusal under the implied consent statute.[2] *Id.* at 290-91, ¶ 14, 100 P.3d at 455-56.

**¶14**        We recognize that the facts of this case are not as extreme as *Estrada* but nevertheless conclude the State failed to establish Spencer's voluntary consent to medical treatment. Voluntariness exists when a choice is "the result of a free choice of the individual," but not when the individual's "will has been overborne and [her] capacity for decision diminished." *State v. Edwards*, 111 Ariz. 357, 361, 529 P.2d 1174, 1178 (1974) (discussing voluntariness of confession). A choice is not voluntary if it is the product of coercion or duress. *State v. Alder*, 146 Ariz. 125, 128, 704 P.2d 255, 258 (App. 1985).

**¶15**        Spencer steadfastly refused medical treatment. She capitulated *only* after being told she would be arrested if she did not go to the hospital. If probable cause existed to arrest Spencer, as the State insists, then other options were available, including obtaining a warrant for a blood draw and invoking implied consent. And the record simply does not support the State's assertion that Deputy Franklin "merely informed [Spencer] that whatever she chose, she would not be permitted to drive home unattended." Nothing suggests, let alone establishes, that Spencer was ever advised she had the option of going home if someone else drove her.

**¶16**        Merely asking or directing a person to act, by itself, does not render a choice involuntary when such a request is made "in the absence of protest or coercion." *State v. Winegar*, 147 Ariz. 440, 447, 711 P.2d 579, 586 (1985) (considering voluntariness of defendant's movement to a building in terms of an illegal arrest). Deputy Franklin's ultimatum, though, occurred in the face of Spencer's repeated and unwavering refusal to obtain medical treatment. *See Butler*, 232 Ariz. at 88-89, ¶ 20, 302 P.3d at 613-14 (consent to blood draw involuntary when juvenile was detained without parents, handcuffed, and told he was "required to submit" to the test).

---

[2]        The implied consent statute states that "[i]f a person under arrest refuses to submit to the test designated by the law enforcement agency as provided in subsection A of this section . . . [t]he test shall not be given, except as provided in § 28-1388, subsection E or pursuant to a search warrant." A.R.S. § 28-1321(D)(1).

## CONCLUSION[3]

**¶17** For the stated reasons, we vacate Spencer's convictions and remand for a new trial that does not include evidence derived from the medical blood draw.



Ruth A. Willingham · Clerk of the Court
FILED: gsh

---

[3] After the suppression motion was denied and it was clear the BAC evidence would be admitted at trial, Spencer stipulated that, for purposes of her submission to the court, her BAC "was greater than .20% within two hours of driving." We disagree with the State's contention that this stipulation renders the suppression ruling irrelevant. Spencer's stipulation was clearly based on the denial of her suppression motion and a desire to preserve her appellate challenge to that ruling, while avoiding a trial on the substantive merits.