IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————

**STATE OF ARIZONA,**
*Appellee,*

*v.*

**PATRICK MCLEOD NISSLEY,**
*Appellant.*

———————

No. CR-15-0393-PR
Filed February 1, 2017

———————

Appeal from the Superior Court in Maricopa County
The Honorable Bruce R. Cohen, Judge
No. CR2011-110536
**REMANDED**

Opinion of the Court of Appeals, Division One
238 Ariz. 446, 362 P.3d 493 (App. 2015)
**VACATED**

———————

COUNSEL:

Mark Brnovich, Arizona Attorney General, Dominic Draye, Solicitor General, Joseph T. Maziarz, Chief Counsel, Criminal Appeals Section, Terry M. Crist, III, (argued), Assistant Attorney General, Phoenix, Attorneys for State of Arizona

Natalee Segal (argued), Ballecer & Segal, LLP, Phoenix, Attorneys for Patrick McLeod Nissley

Mikel Steinfield (argued) and Kevin Heade, Maricopa County Public Defender's Office, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

———————

JUSTICE TIMMER authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES BRUTINEL and BOLICK joined.

JUSTICE TIMMER, opinion of the Court:

**¶1**　　　　A law enforcement officer must ordinarily obtain a search warrant to take an involuntary blood sample from a suspect. Arizona's medical blood draw exception to the warrant requirement, however, requires medical personnel to provide upon request a portion of any blood sample taken from a patient when the officer has probable cause to believe that the patient had been driving under the influence of alcohol or other drugs. A.R.S. § 28-1388(E). This exception applies only when the sample is drawn for medical reasons and exigent circumstances exist. *See State v. Cocio*, 147 Ariz. 277, 286, 709 P.2d 1336, 1345 (1985).

**¶2**　　　　The issue here is whether and under what circumstances the exception can apply when a suspect contends that medical personnel rendered treatment against the suspect's will. We hold that the state is required to prove that a suspect expressly or impliedly consented to medical treatment or that medical personnel acted when the suspect was incapable of directing his or her own medical treatment.

## I.  BACKGROUND

**¶3**　　　　In reviewing the denial of a motion to suppress, "we consider only evidence presented at the suppression hearing and view the facts in the light most favorable to sustaining the trial court's ruling." *State v. Valenzuela*, 239 Ariz. 299, 301 ¶ 3, 371 P.3d 627, 629 (2016) (citation and internal quotations omitted).

**¶4**　　　　On a late afternoon in November 2010, Patrick Nissley drove his car erratically and at a high speed through Scottsdale traffic, crossing lanes and swerving onto a sidewalk. Tragically, Nissley crashed into an oncoming car, injuring four people and killing a pedestrian. Emergency personnel quickly arrived, including city-employed paramedics. They found Nissley delirious, flailing his arms, and screaming incoherently.

**¶5**　　　　Nissley had suffered a head wound and was covered in blood from numerous cuts. He was uncooperative with paramedics, yelling

2

obscenities and demanding to be left alone. The paramedics ignored these demands, concluding that Nissley could not make coherent decisions for his own care. They restrained him and loaded him into an ambulance. He fought them throughout the ride to the hospital. Once there, medical personnel sedated him for treatment and took a blood sample for medical purposes.

¶6         A police officer came to the hospital. She asked for and received a portion of Nissley's blood sample without first procuring a warrant. Subsequent testing of the blood revealed the presence of methamphetamine and an active metabolite of heroin. The State indicted Nissley on charges of second degree murder, endangerment (four counts), and possession or use of narcotic drugs.

¶7         Nissley moved to suppress the results of his blood test for lack of a warrant or a valid exception to the warrant requirement. He argued that because he was treated against his will, the medical blood draw exception did not apply. After an evidentiary hearing, the trial court denied the motion, finding that Nissley did not expressly reject treatment and that the exception applied. A jury subsequently found Nissley guilty of reckless manslaughter (a lesser-included offense of second degree murder) and the remaining charges, and the court imposed sentences. In a split decision, the court of appeals affirmed. *State v. Nissley*, 238 Ariz. 446, 362 P.3d 493 (App. 2015).

¶8         We granted review to clarify application of the medical blood draw exception, a matter of statewide importance. We have jurisdiction pursuant to article 6, section 5, of the Arizona Constitution and A.R.S. § 12-120.24.

**II. DISCUSSION**

¶9         We review the denial of a motion to suppress for an abuse of discretion. *Valenzuela*, 239 Ariz. at 302 ¶ 9, 371 P.3d at 630. We defer to the trial court's factual findings if they are supported by the record, but we review legal determinations de novo. *See State v. Moore*, 222 Ariz. 1, 7 ¶ 17, 213 P.3d 150, 156 (2009). An error of law may constitute an abuse of discretion. *Valenzuela*, 239 Ariz. at 302 ¶ 9, 371 P.3d at 630.

¶10      Section 28-1388(E), the medical blood draw exception, provides:

> Notwithstanding any other law, if a law enforcement officer has probable cause to believe that a person has violated § 28-1381 and a sample of blood, urine or other bodily substance is taken from that person for any reason, a portion of that sample sufficient for analysis shall be provided to a law enforcement officer if requested for law enforcement purposes.  A person who fails to comply with this subsection is guilty of a class 1 misdemeanor.

In *Cocio*, 147 Ariz. at 286, 709 P.2d at 1345, this Court held that a warrantless blood draw seizure is constitutionally permissible under the predecessor to § 28-1388(E) if (1) probable cause existed to believe that the person was driving under the influence, (2) exigent circumstances were present, and (3) the blood was drawn by medical personnel for a medical reason.

¶11      Before addressing the applicability of the medical blood draw exception when treatment is rendered against the suspect's will, we highlight one aspect of *Cocio* that is no longer valid.  The *Cocio* Court found that exigency existed in that case because "[t]he highly evanescent nature of alcohol in the defendant's blood stream guaranteed that the alcohol would dissipate over a relatively short period of time."  *Id.*  Insofar as this language suggests that the natural dissipation of alcohol in the bloodstream itself establishes a per se exigency that authorizes a warrantless blood test, we disavow that suggestion.

¶12      In *Missouri v. McNeely*, the Supreme Court reaffirmed that *Schmerber* requires courts to consider all facts in the particular case to determine whether an exigency exists and expressly rejected a per se exigency based on the dissipation rate of alcohol in the bloodstream.  133 S. Ct. 1552, 1563 (2013) ("[W]hile the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, as it did in *Schmerber*, it does not do so categorically."); *see also id.* ("In finding the warrantless blood test reasonable in *Schmerber*, we considered all of the facts and circumstances of the particular case and carefully based our holding on those specific facts.").  Exigency is not at issue here because Nissley did not contest its existence before the trial court.  *Cf. State v. Newell*, 212 Ariz. 389, 398 ¶ 34, 132 P.3d 833, 842 (2006) (noting that a defendant waives issues

4

concerning the suppression of evidence that were not raised to the trial court). But in future cases, consistent with *McNeely*, the state must establish exigency by showing that under circumstances specific to those cases, it was impractical to obtain a warrant. *See McNeely*, 133 S. Ct. at 1561 ("We do not doubt that some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test. That, however, is a reason to decide each case on its facts . . . not to accept the considerable overgeneralization that a *per se* rule would reflect." (internal quotation marks and citation omitted)). We now address the issues presented by this case.

**¶13** The Fourth Amendment protects individuals against unreasonable searches and seizures by the government and its agents, and a warrantless search is per se unreasonable unless a recognized exception, like the medical blood draw exception, applies. *Valenzuela*, 239 Ariz. at 302 ¶ 10, 371 P.3d at 630. The Fourth Amendment applies to the search here. As the State concedes, state action occurred when medical personnel turned over the blood sample at the officer's request. Medical personnel did not voluntarily provide the sample to the officer; they were compelled to do so by § 28-1388(E) under the threat of criminal prosecution. *Cf. Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614 (1989) (stating that a private railroad which complies with a federal regulation to collect blood and urine samples from train personnel after an accident for testing by the Federal Railroad Administration "does so by compulsion of sovereign authority, and the lawfulness of its acts is controlled by the Fourth Amendment").

**¶14** The federal and state constitutions and common law also safeguard an individual's due process right to direct his or her own course of medical treatment. *See Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990) ("[A] competent person has a constitutionally protected liberty interest [under the Fourteenth Amendment] in refusing unwanted medical treatment."); *Rasmussen v. Fleming*, 154 Ariz. 207, 214–15, 741 P.2d 674, 681–82 (1987) (deciding that common law and Arizona Constitution article 2, § 8 Right to Privacy encompasses a person's "right to chart his or her own plan of medical treatment"). This Court has not addressed whether and under what circumstances the medical blood draw exception to the Fourth Amendment's warrant requirement applies when medical personnel draw blood over a suspect's refusal to be treated. Before this case, our court of

appeals addressed the issue in *State v. Estrada*, 209 Ariz. 287, 100 P.3d 452 (App. 2004), and *State v. Spencer*, 235 Ariz. 496, 333 P.3d 823 (App. 2014).

**¶15** In both *Estrada* and *Spencer*, the court concluded that the medical blood draw exception only applies if the suspect receives medical treatment voluntarily. *Estrada*, 209 Ariz. at 457 ¶ 23, 100 P.3d at 292; *Spencer*, 235 Ariz. at 498 ¶ 9, 333 P.3d at 825. But language used in those decisions has created confusion about what the state must show to invoke the medical blood draw exception. *Cf. State v. Ault*, 150 Ariz. 459, 464, 724 P.2d 545, 550 (1986) (noting that the state bears the burden of proving an exception to the warrant requirement).

**¶16** In *Estrada*, the court stated:

> [W]hen a person is receiving medical treatment against his or her will, the exception of § 28-1388(E) allowing blood draws without a warrant does not apply. In other words, if a person exercises his or her constitutional right to refuse medical treatment in the first place, and does so clearly and expressly, as Estrada did, he or she cannot be forced to accommodate law enforcement's desire for a blood sample.

*Estrada*, 209 Ariz. at 291 ¶ 15, 100 P.3d at 456; *see also id.* at 292 ¶ 23, 100 P.3d at 457 ("In sum, we construe § 28-1388(E) to implicitly require that a person must be receiving medical treatment voluntarily for that statute to allow a warrantless blood draw."). *Spencer* relied on *Estrada* but did not suggest that a suspect can only exercise his or her due process rights by "clearly and expressly" refusing medical treatment. Instead, *Spencer* declared that the state must demonstrate that a suspect's consent "was freely and voluntarily given." *Spencer*, 235 Ariz. at 499 ¶ 12, 333 P.3d at 826 (internal quotations omitted). After these cases, it was unclear whether the state was required to prove that a suspect did not "clearly and expressly" refuse medical treatment (as *Estrada* arguably suggested) or instead that the suspect voluntarily consented to treatment (as stated in *Spencer*). The court of appeals' majority in this case adopted the former approach as a standard while the dissent favored the latter approach. *Nissley*, 238 Ariz. at 454 ¶ 31, 362 P.3d at 501; *see also id.* at 457 ¶ 41, 362 P.3d at 504 (Jones, J., dissenting).

**¶17** Nissley and Amicus argue that the trial and appellate courts mistakenly placed the burden on him to show that he expressly and

unambiguously rejected medical treatment. (Nissley adequately raised this argument on appeal, so we reject the State's waiver argument.) To the contrary, neither court disputed that the State had the burden of proving that it obtained the blood sample lawfully. *See Nissley*, 238 Ariz. at 454 ¶ 31, 362 P.3d at 501 (stating that the State had to "prove[] Nissley did not unambiguously, clearly and expressly refuse medical treatment"). The question is whether the courts correctly delineated the showing required to carry that burden.

¶18 Nissley and Amicus assert that just as the state must prove that a defendant freely and voluntarily consented to a blood draw to use the consent exception to the Fourth Amendment's warrant requirement, it must prove that a defendant freely and voluntarily consented to medical treatment to use the medical blood draw exception. *See Valenzuela*, 239 Ariz. at 301 ¶ 1, 371 P.3d at 629 (discussing consent exception for Fourth Amendment purposes). The State counters that this standard is not constitutionally required and would prevent law enforcement from using the exception when a defendant is incapable of giving consent, as occurs in many medical emergencies.

¶19 To identify the correct standard, we begin by examining the scope of an individual's right to direct his or her own medical treatment. To exercise the right, the person must have "the capacity to reason and make judgments." *Rasmussen*, 154 Ariz. at 216, 731 P.2d at 683 (citation omitted) (discussing the common law doctrine of informed consent); *see also Cruzan*, 497 U.S. at 280 (recognizing that "[a]n incompetent person is not able to make an informed and voluntary choice" to refuse treatment). The right is not absolute. "[T]he right may be limited by the state's interest in preserving life, safeguarding the integrity of the medical profession, preventing suicide, and protecting third parties." *Rasmussen*, 154 Ariz. at 216, 731 P.2d at 683; *see also Cruzan*, 497 U.S. at 279 ("[W]hether respondent's constitutional rights [to refuse unwanted medical treatment] have been violated must be determined by balancing his liberty interests against the relevant state interests.") (citation and internal quotation marks omitted); *Washington v. Harper*, 494 U.S. 210, 225–26 (1990) (recognizing that the liberty interest in refusing consent to an antipsychotic drug injection can be outweighed by a state's interest in maintaining prison security).

¶20 From these authorities, we conclude that in addition to showing probable cause, exigency, and that blood was drawn in the course

of medical treatment for medical purposes, the state must prove that a blood sample obtained under the medical blood draw exception was drawn in compliance with the defendant's right to direct his or her own treatment. *See* Ariz. R. Crim. P. 16.2(b) (providing that prosecutor has burden of proving lawful acquisition of all evidence to be used at trial). Other than when the defendant was incapable of providing consent, *see infra* ¶ 21, the state must show that the defendant freely and voluntarily consented to treatment. *See Spencer*, 235 Ariz. at 499 ¶ 12, 333 P.3d at 826. Consent may be express or implied. *See Bronneke v. Rutherford*, 89 P.3d 40, 43 (Nev. 2004). In deciding whether the state has met its burden, a court should examine the totality of circumstances, which may include whether the defendant communicated an unwillingness to be treated. *Cf. Jones v. Malloy*, 412 N.W.2d 837, 841 (Neb. 1987) ("[I]mplied consent may be inferred from the patient's action of seeking treatment or some other act manifesting a willingness to submit to a particular course of treatment.").

**¶21** Because the right to direct treatment is not absolute, the state can also satisfy its burden by showing that medical personnel acted when consent could not be obtained, such as when the defendant was unconscious or delirious, thereby rendering the defendant incapable of giving consent. *Cf. Canterbury v. Spence*, 464 F.2d 772, 788–89 (D.C. Cir. 1972) (concluding that in an emergency, when the person is "unconscious or otherwise incapable of consenting, and harm from a failure to treat is imminent and outweighs any harm threatened by the proposed treatment . . . the impracticality of conferring with the patient dispenses with need for it"); *see also In re Estate of Allen*, 848 N.E.2d 202, 211 (Ill. App. 2006) ("In ordinary circumstances, when a physician is confronted with a patient who is unable to consent and is in need of prompt medical attention, it is logical to assume that the patient would consent to the procedure and imply the patient's consent from the circumstances." (citation omitted)).

**¶22** Nissley argues against application of the medical blood draw exception when a defendant is treated while unconscious or otherwise incapable of giving consent. But when both probable cause and exigent circumstances exist, law enforcement can direct its own warrantless blood draw under the unconscious exception, A.R.S. § 28-1321(C). *Cf. State v. Huffman*, 137 Ariz. 300, 302–03, 670 P.2d 405, 407–08 (App. 1983) ("All that is required under the facts here is that there be probable cause to believe that the defendant is intoxicated and that the officer might reasonably believe that he is confronted with an emergency so that the delay necessary

to obtain a warrant, under the circumstances, threatens destruction of the evidence."). No reason exists to preclude law enforcement from obtaining a portion of a blood sample validly drawn during medical treatment. Indeed, obtaining part of an existing sample would be less intrusive than getting a second sample under the unconscious exception. *See Cocio*, 147 Ariz. at 286–87, 709 P.2d at 1345–46 (suggesting that police intrusion is minimized by sampling blood drawn for medical reasons in lieu of directing a new blood draw).

¶23 In determining the scope of the state's burden, we have relied somewhat on medical battery cases addressing a person's right to direct treatment. Amicus asserts that this reliance is misplaced because "[t]reatment and seizure are two different questions." It urges us to rely only on Fourth Amendment authorities. We decline to do so. Because this case implicates both Fourth Amendment rights and Nissley's right to direct his own medical treatment, it is appropriate not only to require exigency and probable cause, but also to consider due process and common law principles, even if developed in part in tort cases.

¶24 In sum, to invoke the medical blood draw exception set forth in § 28-1388(E), the state must establish that (1) probable cause existed to believe that the suspect was driving under the influence, (2) exigent circumstances made it impractical for law enforcement to obtain a warrant, (3) the blood was drawn by medical personnel for a medical reason, and (4) the provision of medical services did not violate the suspect's right to direct his or her own medical treatment.

### III. CONCLUSION

¶25 We vacate the court of appeals' opinion. The record here does not conclusively establish whether Nissley was able or competent to direct his own medical treatment and whether medical personnel acted against that right. We therefore remand to the trial court to apply the standards set forth in this opinion and to determine in the first instance whether law enforcement lawfully obtained the blood sample. If it did not, the court must vacate Nissley's convictions and sentences, suppress the blood alcohol evidence, and order a new trial.