SWANN, Judge:
¶ 1 Oswaldo Diaz, Jr., who faces prosecution for aggravated driving under the influence ("DUI"), seeks special-action relief from the superior court's refusal to suppress blood evidence obtained under A.R.S. § 28-1388(E) 's "medical-draw exception" to the Fourth Amendment's warrant requirement.
¶ 2 We accept jurisdiction and grant relief. Our supreme court's additions to § 28-1388(E) 's express requirements make clear that the medical-draw exception for seizure of blood samples requires a showing of exigent circumstances. And it is well-established that this showing must demonstrate an imminent risk of destruction of blood-alcohol evidence beyond that posed by the natural evanescence of alcohol in the bloodstream-a circumstance that will rarely be present when the state seeks to effect a warrantless seizure of an already-preserved blood sample. Here, no exigent circumstances were present, and the test results from the improperly seized blood sample therefore must be suppressed.
FACTS AND PROCEDURAL HISTORY
¶ 3 On March 7, 2016, at approximately 6:42 p.m., a witness discovered a vehicle crashed into a business's entry gate, with the engine still running. Diaz, the driver, was the vehicle's sole occupant. The witness saw Diaz *1216 turn off the engine and slump over the steering wheel.
¶ 4 Fire department personnel extracted Diaz and, finding him unresponsive with no visible trauma, placed him in an ambulance for transport to a hospital. Diaz was still unresponsive when he arrived at the hospital, and medical imaging revealed no trauma. Medical personnel determined that he was stable, but intubated him and placed him on a breathing machine while they worked to determine the cause of his unresponsive state and decide how to treat him. Hospital personnel also drew blood for medical purposes, and stored it securely. A nurse noticed the odor of alcohol on Diaz's breath and person.
¶ 5 Police were advised of all the foregoing, and of the fact that medical personnel had drawn blood from Diaz for medical purposes. Without attempting to obtain a warrant, a police officer took custody of the blood at approximately 7:38 p.m. The state eventually tested the blood for its alcohol content, and thereafter charged Diaz with aggravated DUI under A.R.S. §§ 28-1381 and -1383. Diaz seeks special-action relief from the superior court's denial of his motions seeking suppression of the blood evidence.
JURISDICTION
¶ 6 We accept special-action jurisdiction because Diaz's petition presents a purely legal issue of statewide importance that is likely to recur. Vo v. Superior Court (State ) , 172 Ariz. 195, 198, 836 P.2d 408, 411 (App. 1992).
DISCUSSION
¶ 7 The Fourth Amendment protects the people from unreasonable searches and seizures by the government; a warrantless search is reasonable only if authorized by a recognized exception to the warrant requirement. Missouri v. McNeely , 569 U.S. 141, 148, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013) ; State v. Nissley , 241 Ariz. 327, 331, ¶ 13, 387 P.3d 1256, 1260 (2017).
¶ 8 In blood-alcohol cases, the Fourth Amendment may be implicated at three stages: "(1) the physical intrusion into [the] body to draw blood, (2) the exercise of control over and the testing of the blood sample, and (3) obtaining the results of the test." State v. Hardy , 963 S.W.2d 516, 526 (Tex. Crim. App. 1997). When the physical intrusion is conducted by treating medical personnel, independent of government action, the Fourth Amendment does not apply to that stage. See United States v. Jacobsen , 466 U.S. 109, 113-14, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (holding that the Fourth Amendment "is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official' "). In such circumstances, the Fourth Amendment is not triggered until the state takes custody of the existing blood sample. See Nissley , 241 Ariz. at 331, ¶ 13, 387 P.3d at 1260 ("[S]tate action occurred when medical personnel turned over the blood sample at the officer's request.' "). (A fortiori , the Fourth Amendment also applies when the state tests and receives test results for the sample).
¶ 9 Arizona law contains a "medical-draw exception" that authorizes the warrantless seizure of certain blood samples drawn by private actors. A.R.S. § 28-1388(E) provides:
Notwithstanding any other law, if a law enforcement officer has probable cause to believe that a person has violated § 28-1381 and a sample of blood, urine or other bodily substance is taken from that person for any reason, a portion of that sample sufficient for analysis shall be provided to a law enforcement officer if requested for law enforcement purposes.
The statute, of course, cannot trump the Fourth Amendment. In State v. Cocio , the Arizona Supreme Court relied on Fourth Amendment jurisprudence to graft an exigency requirement onto § 28-1388(E) 's substantially similar statutory predecessor. 147 Ariz. 277, 286, 709 P.2d 1336, 1345 (1985) (citing Schmerber v. California , 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and Cupp v. Murphy , 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) ), abrogated by Nissley , 241 Ariz. 327, 387 P.3d 1256. Cocio established that the statute applies "if 1) probable cause exists to believe the person has violated [the law prohibiting DUI], 2) exigent circumstances are present and, 3) the blood is drawn for medical purposes by medical personnel." Id. And in Nissley , the supreme *1217 court recently added a fourth requirement that "the provision of medical services did not violate the suspect's right to direct his or her own medical treatment." 241 Ariz. at 330, 333, ¶¶ 10, 24, 387 P.3d at 1259, 1262.
¶ 10 The third and fourth Cocio and Nissley requirements establish that the Fourth Amendment analysis begins post-draw because the draw itself is the result of medical activities, not state action. The first and second Cocio and Nissley requirements, by contrast, define the substantive standard for a warrantless seizure of the already-drawn sample: probable cause plus exigency.[1] That standard is identical to the exigent-circumstances exception to the warrant requirement. See McNeely , 569 U.S. at 148-49, 133 S.Ct. 1552 ; State v. Wilson , 237 Ariz. 296, 298, ¶¶ 9-10, 350 P.3d 800, 802 (2015). Accordingly, the medical-draw exception is, by virtue of the supreme court's recognition of an exigency requirement, simply an application of the exigent-circumstances exception to the warrant requirement.
¶ 11 In 2013, the United States Supreme Court made clear in McNeely that the natural evanescence of alcohol in the bloodstream does not establish a per se exigency. 569 U.S. at 148-54, 133 S.Ct. 1552 (clarifying rule and describing consistency with Schmerber ); see also State v. Havatone , 241 Ariz. 506, 512, ¶¶ 25-28, 389 P.3d 1251, 1257 (2017) (discussing McNeely and Schmerber ). Additional facts showing an imminent risk that the evidence will be destroyed are necessary. McNeely , 569 U.S. at 148-54, 133 S.Ct. 1552. When the Fourth Amendment analysis begins post-draw, it is difficult to imagine such additional facts. For a legally cognizable exigency to exist, an existing blood sample would have to be at imminent risk of destruction or degradation. That might be the case if, for example, the facility housing the sample were on fire or the custodian was about to immediately dispose of or alter the sample. But in the absence of such improbable circumstances, there is no exigency. As a practical matter, our supreme court's recognition of the constitutional exigency requirement as a necessary element of the statutory medical-draw exception renders the statute toothless.
¶ 12 We note that nothing prevents the state from requesting that medical personnel preserve already-drawn blood in a form that will permit subsequent testing. But the fact that the blood can be preserved in that manner highlights why the warrant requirement is a practical means of obtaining blood samples that have been legitimately secured by medical personnel for medical purposes.
¶ 13 Here, the state acknowledges that "the record does not demonstrate exigency for the officer's warrantless taking" of blood that "had already been drawn and preserved in vacutainers by medical personnel." The state contends, however, that Diaz's medical state created an exigency because he could have been treated with blood-content-altering medication, or he could have been rendered unavailable by surgery. The state thus argues that "where exigent circumstances would have permitted the officer to direct [a new/second] blood draw without a warrant, allowing the officer to seize a portion of blood from an already-drawn medical sample[ ] only serves to minimize the intrusion to the defendant by eliminating a second invasion of his veins."
¶ 14 The state's argument is unpersuasive because there would be no need for a second blood draw absent a risk that the already-drawn sample would not be available to the state after obtaining a warrant. And if there were such a risk, that risk would presumably constitute an exigent circumstance justifying a warrantless seizure of the already-drawn blood sample. Either way, there would be no need to "minimize the intrusion to the defendant" by eliminating a second blood draw.
¶ 15 Finally, we note that under the good-faith exception to the warrant requirement,[2] "searches conducted in objectively *1218 reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." Davis v. United States , 564 U.S. 229, 232, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). We acknowledge that in Cocio , the Arizona Supreme Court interpreted Schmerber as recognizing exigency based on bloodstream evanescence alone. 147 Ariz. at 286, 709 P.2d at 1345. Cocio is arguably distinguishable from this case, however, because in Cocio , law enforcement officers requested (before the medical draw) that hospital personnel procure a sample for law enforcement purposes, id. at 285, 709 P.2d at 1344, whereas in this case, law enforcement officers did not request or seek a sample until after the blood had been drawn and evanescence was presumably no longer a concern. Nevertheless, we need not address that issue, because Cocio is not controlling in light of the United States Supreme Court's 2013 ruling in McNeely , which clarified that Schmerber does not stand for the proposition that exigency may be based on bloodstream evanescence alone.[3] 569 U.S. at 148-54, 133 S.Ct. 1552.
¶ 16 After McNeely , therefore, Cocio could not reasonably be understood to permit a per se exigency standard in medical-draw cases. See Nissley , 241 Ariz. at 330-31, ¶¶ 11-12, 387 P.3d at 1259-60 (recognizing invalidity of Cocio 's definition of medical-draw exigency post- McNeely ); cf. State v. Reyes , 238 Ariz. 575, 578-79, ¶ 19, 364 P.3d 1134, 1137-38 (App. 2015) (recognizing widespread application of Cocio 's exigency standard in medical-draw cases as late as 2012). In view of the clear state of the law at the time of the seizure in this case (in 2016) and the state's failure to put forth any evidence or argument that the police officer's actions were not deliberate, we hold that application of the exclusionary rule is warranted. See Davis , 564 U.S. at 240, 131 S.Ct. 2419 (discussing propriety of exclusion when constitutional violation is deliberate and culpable); Havatone , 241 Ariz. at 511-14, ¶¶ 21-34, 389 P.3d at 1255-58 (declining, in view of Schmerber , to apply good-faith exception with respect to systemic misapplication of per se exigency standard to Arizona's implied-consent statute); cf. State v. Jean , 243 Ariz. 331, 342-45, ¶¶ 40-47, 407 P.3d 524, 535-38 (2018) (applying good-faith exception based on conclusion that police acted in objectively reasonable reliance on binding case law).
¶ 17 Because the state did not obtain a warrant to seize Diaz's blood sample, and because there were no exigent circumstances justifying the seizure, the test results from the improperly-seized sample must be suppressed.[4]
CONCLUSION
¶ 18 We accept jurisdiction and grant relief. The improperly-obtained blood evidence must be suppressed.

We assume for purposes of our analysis that probable cause existed to believe that Diaz had committed DUI.

The state did not raise the good-faith exception in the superior court proceedings or in its response to Diaz's petition for special action. We suasponte ordered the parties to address the good-faith exception at oral argument. We raised the issue because we are required to consider whether there are any legally correct grounds for the superior court's decision. See State v. Boteo-Flores , 230 Ariz. 551, 553, ¶ 7, 288 P.3d 111, 113 (App. 2012).

Citing Cocio , which held that "[o]nce physical evidence has been validly seized, it may be tested," 147 Ariz. at 287, 709 P.2d at 1346, the state also argues that Diaz has no privacy interest in the alcohol content of his "lawfully seized" blood. We need not decide that issue, because no search can be lawful if the material in which the search is conducted was obtained by an unlawful seizure. The issue here is whether the state lawfully seized the blood sample in the first place.

We note that, if medical personnel retained any additional blood samples from Diaz, nothing prevents the state from seeking a warrant to conduct testing on those samples.