NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

HADEED NAJIM, *Appellant*.

No. 1 CA-CR 22-0127
FILED 9-19-2023

Appeal from the Superior Court in Maricopa County
No. CR2020-139470-001
The Honorable Howard D. Sukenic, Judge *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eliza Ybarra
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Damon A. Rossi
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Brian Y. Furuya joined.

**B A I L E Y**, Judge:

¶1        Hadeed Najim, f/k/a Sharod Willie Austin, appeals from his conviction and resulting sentence for aggravated assault.  We affirm Najim's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to sustaining the jury's verdict.  *State v. Fuentes*, 247 Ariz. 516, 520, ¶ 2 (App. 2019).

¶3        While working overnight in an industrial area of Tempe, the victim and his co-worker went outside for a smoke break and saw Najim walking along the nearby frontage road.  Soon after, Najim rushed up and stabbed the victim's neck and back multiple times.  Najim then fled the area.

¶4        Earlier that night, a security guard for a nearby business saw Najim on the premises and asked him to leave.  Finding Najim's presence suspicious, the security guard and his co-workers drove around the area after their shift.  When they reached the victim's workplace, they saw Najim attack the victim.  One of the security guard's co-workers found Najim nearby and detained him until police arrived.  Near where Najim was found, police discovered a knife with the victim's DNA on the blade and Najim's DNA on the handle.

¶5        The State charged Najim with one count of aggravated assault with a deadly weapon or dangerous instrument, a class three felony and dangerous offense.  *See* Ariz. Rev. Stat. ("A.R.S.") § 13-1204.  Najim moved to dismiss the charge, arguing that his due process rights were violated, in part because the investigating officer muted her body-worn camera during portions of her interview with the victim.  After full briefing and an evidentiary hearing, the superior court found no due process violation and denied Najim's motion.  The court found that the investigating officer did not act in bad faith, there was no evidence that any information of evidentiary value was lost, and that any missing information could be obtained through officer reports and subsequent witness interviews.

**¶6**        Following trial, the jury found Najim guilty as charged.  Based on the jury's finding of aggravating circumstances and Najim's two prior dangerous felony convictions, the court sentenced him to 25 years in prison.  *See* A.R.S. § 13-704(E).

**¶7**        Najim timely appealed.  We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶8**        We review the denial of a motion to dismiss for an abuse of discretion.  *State v. Hulsey*, 243 Ariz. 367, 377, ¶ 17 (2018).  We defer to the superior court's findings of fact when they are supported by the record and not clearly erroneous.  *Id.*  But we review *de novo* the court's legal conclusions, including whether Najim's due process rights were violated.  *See State v. Smith*, 250 Ariz. 69, 82–83, ¶ 34 (2020).

**¶9**        The failure of police to preserve "potentially useful evidence" violates due process only if the police acted in bad faith.  *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  "Absent bad faith on the part of the officers, due process is violated only when the evidence possessed an obvious exculpatory value and is of such a nature that the defendant would not be able to obtain comparable evidence by other reasonable means."  *State v. Turner*, 251 Ariz. 217, 221, ¶ 11 (App. 2021) (citing *Hulsey*, 243 Ariz. at 377, ¶ 18).

**¶10**        Najim concedes that the victim's unrecorded statements were not "materially exculpatory" but only "potentially useful."  Therefore, to show a due process violation, Najim must show that the investigating officer acted in bad faith.  *See id.*  Najim argues that when the officer muted her body-worn camera while speaking with the victim at the hospital, she failed to preserve the victim's potentially useful statements and acted in bad faith.

**¶11**        The investigating officer met the victim at the hospital immediately after the assault.  When she arrived, her body camera was on, recording audio and video.  The officer questioned the victim both before and after the victim was taken for a CAT scan.  The officer then reviewed the victim's account and asked him follow-up questions.

**¶12**        The body camera footage shows that for the next three minutes, the officer flipped through her notes, put her pen away, sat down, and called to check on the status of the officer who was meeting her at the

hospital with the swabs to collect the victim's DNA. She then asked the victim one more question and after about 20 seconds of silence, she muted her body camera's audio. Her camera remained muted for the remaining 24 minutes of her interaction with the victim. Moments after the officer muted her body camera, the victim spoke with her again for about four minutes while she took notes. The victim did not speak again until the other officer arrived with the DNA swabs and the investigating officer collected the victim's DNA samples. After his DNA was collected, the victim spoke with both officers for a few minutes until medical staff arrived to treat his wounds. The investigating officer then completed her paperwork and left the hospital. All told, the victim appeared to speak with officers for less than half of the 24 minutes that the officer's body camera was muted.

¶13        At the evidentiary hearing on Najim's motion, the investigating officer testified that while interviewing people in hospital settings, she often mutes her body camera when the interview is over because hospital staff discuss personal, medical information. She further testified that she muted her body camera after she finished her interview with the victim and was waiting for the other officer to arrive with the DNA swabs. She explained that because she was located near a nurses' station, she muted her body camera after the interview concluded to protect patients' privacy. The officer also explained that the Tempe Police Department's body camera policy states that officers "shall not record in a hospital setting unless it's for a criminal investigation." She explained that, although the policy states that officers should provide a reason for muting their body cameras, it is not required.

¶14        Najim contends that the investigating officer acted in bad faith because she failed to mute her body camera at earlier points when patient information was discussed. But the officer testified that she muted her body camera once she believed the interview was finished. At that point, because she no longer had an investigative purpose, she muted her camera to protect the privacy of patients in the hospital. And although the officer did not mute her camera at earlier points—when private information may have been discussed nearby—it is evident that this was because her investigation was ongoing. It was only once she believed the interview was over that she muted her camera. The footage shows that she muted her body camera at the conclusion of her questioning and as she awaited the other officer's arrival.

¶15        The superior court found the investigating officer's testimony credible, a decision to which we defer. *See State v. Estrada*, 209 Ariz. 287, 292, ¶ 22 (App. 2004) ("Because the trial court was in the best position to

observe the demeanor of the witnesses and determine their possible biases, we must defer to its assessment of their credibility[.]") (citations omitted), *holding modified by State v. Nesley*, 241 Ariz. 327 (2017). Nothing in our review of the video recording leads us to conclude that the court's ruling is clearly erroneous or an abuse of discretion.

**¶16** Najim also argues that the investigating officer acted in bad faith because she did not follow the Tempe Police Department's body camera policy when she muted her body camera. We disagree.

**¶17** Pursuant to the Tempe Police Department's policy, an officer is not to record in a hospital unless it is for a criminal investigation. Though the investigating officer did not announce a reason for muting her body camera, the policy states this action as a recommendation, not a requirement. At worst, assuming their later exchange had any evidentiary value, the officer acted negligently in failing to restart the audio when the victim resumed speaking and she resumed notetaking. But negligence is not bad faith. *Youngblood*, 488 U.S. at 58; *see also Turner*, 251 Ariz. at 222, ¶ 17.

**¶18** Najim contends that failing to restart the audio at this point was intentional, not negligent. In support of this position, Najim argues that while her audio recording was muted, the officer blurred the camera's video as she took notes. But this argument ignores that the officer blurred her notes throughout her conversation with the victim following his CAT scan, both while the camera recorded audio and after she muted the camera. Her blurring of notes, without more, is not evidence of bad faith. And the officer testified that she documented the victim's relevant statements in her report, which Najim received. The superior court weighed the competing characterizations of this evidence, including testimony, and concluded against Najim's position. We will not reweigh the evidence on appeal. *State v. Lee*, 189 Ariz. 590, 603 (1997).

**¶19** We see no error in the superior court's ruling that the investigating officer did not act in bad faith and that Najim was not denied due process. The court thus properly denied Najim's motion to dismiss.

**CONCLUSION**

¶20        We affirm Najim's conviction and sentence.[1]



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

[1] The superior court's sentencing order incorrectly lists the date of offense for both of Najim's prior dangerous felony convictions as June 29, 2013. The record shows that Najim's prior offense of aggravated assault was committed on June 28, 2013, and his prior offense of attempted armed robbery was committed on June 29, 2013. Despite this typographical error, the superior court properly sentenced Najim because he was convicted of two prior dangerous felony convictions.